## GENERAL COURT, OCTOBER TERM, 1802.

### PANCOAST's Lessee *vs.* ADDISON.

The Statute of 21 *James I. ch.* 16, has been adopted by the courts of *Maryland* as applicable, &c

The words "*beyond seas*," in the saving of the statute of 21 *James I. ch.* 16, are synonymous with, *out of the jurisdiction of the state*

A nonresident of the state, but who is a resident of one of the *United States*, is not barred by the statute of limitations in an action of ejectment.

The Statute of 32 *Henry VIII ch.* 2, s 2, respecting dormant titles, does not extend to this state, nor has it been adopted or introduced therein by any decision

The general reputation and tradition in a family of the death of one of its members, and of his having died seized of real estate, is evidence of those facts, even in an action of ejectment for such estate by another of the same family claiming under the deceased.

Hearsay, derived from a person who was then heir at law, and claimed the land for which the ejectment is brought, admitted as legal and competent evidence for the plaintiff in such action to prove pedigree, descent, &c.

EJECTMENT for a tract of land called *Pencott's Invention,* otherwise called *Pencost's Invention,* lying in Prince-George's county. The defendant took defence on the plots made and returned in the cause, for a tract of land called *The Discovery,* and a tract of land called *Gisborough Manor.* He also located his possession of the said tracts by actual enclosures made in 1772, and continued to the present time.

1. The plaintiff at the trial gave in evidence a grant to *James Pencott,* dated the 1st of October 1687, for the tract of land mentioned in the declaration called *Pencott's Invention.* He also gave in evidence that the said *James Pencott,* the grantee, died before the year 1734, in the province of *Maryland,* intestate, seised of the said land; that at the time of his death, his brother *William,* his heir at law, was residing in the province of *New Jersey;* that the said *William,* and his heirs, (the heirs of the said grantee,) resided from that time, until within six years past, in the province and state of *New Jersey;* that they, nor either of them, had ever come within the province or state of *Maryland* in the intermediate time; that the lessor of the plaintiff is, and was at the time when this suit was instituted, the heir at law of the said grantee, and first came into the state of *Maryland* within *six years* past.

The defendant prayed the opinion of the court, and their direction to the jury, that if they are satisfied that the lessor of the plaintiff is heir at law of *James Pencott*, the patentee; that the said patentee died before the year 1734, leaving his brother his heir at law, at that time of full age residing in the then province now state of *New Jersey*, and one of the *United States* of *North America*, and that the said heir at law is since dead, leaving the father of the lessor of the plaintiff of full age, his heir at law, and that afterwards the father of the lessor of the plaintiff died in 1759, leaving the lessor of the plaintiff, at that time an infant, his heir at law, and that neither the lessor of the plaintiff, nor his ancestors, did at any time between the year 1734 and 1798, make entry upon or hold any possession of the land in the declaration in this cause mentioned; and if they further find that the said land was escheated in the year 1734, and patented to *Lewis Wilcoxen*, and that afterwards the said *Wilcoxen* in the year 1738, for a valuable consideration, sold the same to *Thomas Addison*, and that the same, by regular mesne conveyances, came into the possession of the defendant, and that the defendant, and those under whom he claims, ever since the year 1734 down to the present time, have by themselves and their tenants been in the actual possession, use, and enjoyment of the said land, and have paid quit rents for the same from the year 1734 to the year 1775, and have paid taxes and assessments for the same to the state of *Maryland* from the year 1775 to this time, that then the lessor of the plaintiff cannot recover in this suit, notwithstanding the heirs of the said patentee had always resided in the said province and state of *New Jersey*, and had been absent out of the province and state of *Maryland* as aforesaid.

The question raised was opened and argued by

Oct 1802

Pancoast
vs
Addison

*Key, Shaaff* and *Mason,* for the Defendant *(a),* and by *Martin,* (Attorney General,) and *Gantt,* for the Plaintiff *(b).*

CHASE, Ch. J *(c).* The question before the court is, whether a person residing out of the state is within the saving of the statute of 21 *James I. ch.* 16?

It is admitted that this question has not been decided by the courts of *Maryland.* If it has undergone a judicial decision, such decision has not been referred to.

The importance of this question has induced the counsel to go into a very full and elaborate discussion of it, and great ingenuity has been displayed in raising and obviating the difficulties which have been suggested to the court.

The clause of the statute which relates to the case is in the following words: "That no person or persons shall at any time hereafter make any entry into any lands, tenements or hereditaments, but within twenty years next after his or their right or title which shall hereafter first descend or accrue to the same, and in default thereof such person so not en-

*(a)* They cited and relied on the statute 21 *Jac I. ch.* 16. 8 *Bac. Ab.* 5 3 *Stat.* 32 *Hen VIII. ch.* 2 ·, 2, 8. *King vs. Walker,* 1 *Blk. Rep* 286. *Ward vs. Hallam,* 2 *Dall. Rep* 217. *Show. Rep.* 523 3 *In t* 140 3 *Blk. Com.* 167, 178, 196, 353, 354. *Statute* 13 *Edw. I ch.* 1 *Roll. Ab* 11, 12. 2 *Harr and M·Hen.* 401. 2 *Mod. Ent.* 319. 1 *Saund* 36, 37 *Hat* 1·9. *Cro. Car.* 513 2 *Inst.* 3 3 1 *Bac. Ab.* 310, 311. *Roll. Ab.* 358. 2 *Salk.* 483. 484.

*(b)* They cited and relied on *Cruise on Fines,* 77, 79 *Stat* 3 *Edw I. ch.* 44. 18 *Edw. I. Stat.* 4 *ch.* 1. 1 *Rich III ch.* 7, *s.* 6. *Co. Litt.* 244, *a.* 1 *Blk. Com.* 93, 109, 110, 457 *Stat.* 4 *Hen. VII. ch* 24. *Plow* 36·. 376 1 *Dall Rep.* 15, 67. 10 *Vin Ab.* 160, *pl.* 7. *tit. Esso.gn.* 2 *Inst* 253. *Stat.* 13 *Edw I Stat* 2, *West.* 2, *ch.* 2, *s.* 3. 4 *Vin. Ab* 217. 39 *Edw. III Jacob's Law Dict. tit. Navy.* Act of 1715, *ch.* 23, *s* 3. 1 *Harr. & M·Hen.* 28, 30, 84, 89. *Plow* 360, 363. 3 *Harr & M·Hen* 122. *Dyer* 8 *Rich. II. Co. Litt.* 107, *Sect.* 157, and *(note* 115). 260 *Sect.* 439. *Showers Rep* 91. *Holt's Rep* 426. *Vaugh. Rep.* 300. 10 *Vin Ab.* 161, *pl.* 67 *(note) Jenk Rep.* 10. *pl* 18 *Atk.* 614. 3 *Blk · om.* 177. *Stat* 11, *Edw. III ch.* 3 25 *Edw. III ch.* 2 12 *Rich II, ch* 8. 13 *Hen IV. ch.* 6. 3 *Hen. VI. ch.* 2. 3 3 *Edw IV ch.* 4 4 *Edw. IV. ch.* 1. 3 *Hen VII ch.* 7. 7 *Hen. VII. ch.* 2 11 *Hen VII, ch.* 27 12 *Hen. VII ch* 6 19 *Hen. VII. ch.* 5. *Rull. Ab.* 358. 1 *Bac. Ab* 310 *tit: Bastardy.* 1 *Ld. Raym.* 395. 1 *Salk.* 122. 2 *Salk* 483. 2 *Stra* 925 *Co. Litt.* 356, *Sect* 677 3 *B tc. Ab.* 302 *Brac.* 276 1 *Wils.* 134.

*(c) Done,* J. concurred. *Duvall* J. gave no opinion.

tering, and their heirs, shall be utterly excluded and disabled from such entry after to be made, any former law or statute to the contrary notwithstanding; provided nevertheless, that if any person or persons, that is or shall be entitled to such writ or writs, or that hath or shall have such right or title of entry, be, or shall be, at the time of the said right or title, first descended, accrued, come or fallen, within the age of one and twenty years, *feme covert, non compos mentis,* imprisoned, or *beyond the seas,* that then such person and persons, and his and their heir and heirs, shall or may, notwithstanding the said twenty years be expired, bring his action, or make his entry, as he might have done before this act; so as such person and persons, or his or their heir and heirs, shall within ten years next after his and their full age, discoverture, coming of sound mind, enlargement out of prison, or coming into this realm, or death, take benefit of and sue forth the same, and at no time after the said ten years."

This statute has been adopted by the courts of *Maryland* as applicable to our situation.

To ascertain the meaning of the words "*beyond the seas,*" and to shew in what sense they have been understood by the judges of *England,* the parliament and law writers, the common law of *England,* acts of parliament, and adjudged cases, have been referred to.

It appears to me, upon the best consideration I have been able to give the able and diffusive arguments of the counsel, and the authorities cited, that "*beyond the four seas,*" "*beyond the seas,*" and "*out of the realm,*" are synonimous, and mean precisely the same thing.

Prior to the union of the two crowns of *England* and *Scotland,* on the accession of *James* the 1st, the words "*beyond the four seas,*" "*beyond the seas,*" and "*out of the Realm,*" meant and signified out of the limits of the realm of *England.* After the union of the two crowns, and at the time the act of parliament under consideration passed, the above words meant out

Oct. 1802

Pancoast
vs
Addison

of the realm of *Great Britain*, including *England* and *Scotland*.

This explanation of the words, according to my judgment, will serve or go a great way in solving the difficulties which have occurred in the discussion of the question.

In the case of bastardy, according to the common law of *England*, if the baron was within the four seas from the time of the conception to the birth, the child was legitimate, access being presumed, unless the baron, from imbecility or some bodily infirmity, was incapable of getting a child. The late decisions allow of proof of non access to bastardize the issue, and so is the law established.

According to my judgment, if the baron was in *Ireland*, from the time of the conception to the birth, the issue would be a bastard; *Ireland* being a distinct realm and not within the four seas or realm of *England*.

The case in *Rolle's Abr.* 358, which seems to be the puzzle peg, is either to be reconciled in the following manner, or is overruled in *Rex. vs. Alberton*, in 1 *Lord Raymond* 395, to which case Lord Baron *Gilbert*, in *Bac. Ab.* 310, refers.

The case in *Rolle* is, if the husband is in *Ireland* while the wife goes with child, such child is not a bastard; the reason added is what occasions the doubt, because he is within the king's *dominions*.

If a special verdict had found, that the baron was in *Cadiz* while the wife was going with child, the decision would have been the same, because the husband must be beyond the four seas at the conception, and at the birth, as well as during the pregnancy; and on the above finding in *Rolle*, the court could not adjudge. the issue to be illegitimate.

In *Raymond* the court decided he is a bastard who is begotten and born of a *feme covert* while her husband is *beyond the four seas*. But independent of this, I think a person residing out of the state of *Maryland*, is within the saving of the act of parliament, as adopted by *Maryland*. This opinion, I trust, is according to the true construction of the act, of the

decision in 1 *Blk. Rep.* 286, *King vs. Walker*, and consonant to the principles of justice.

The second section of the act is in the following words: "Provided nevertheless, That if any person or persons, that is or shall be entitled to such writ or writs, or that hath or shall have such right or title of entry, be or shall be at the time of the said right or title first descended, accrued, come, or fallen, without the age of one and twenty years, *feme covert, non compos mentis,* imprisoned, or *beyond the seas,* that then such person and persons, and his and their heir and heirs, shall or may, notwithstanding the said twenty years be expired, bring his action, or make his entry, as he might have done before this act; so as such person and persons, or his or their heir and heirs, shall within ten years next after his and their full age, discoverture, coming of sound mind, enlargement out of prison, or coming into this realm, or death, take benefit of and sue forth the same, and at no time after the said ten years."

The concluding words "*coming into this realm,*" point out the meaning of the parliament. They stand in opposition to "*beyond the seas,*" and indicate plainly the intention of the legislature was to comprehend all persons within the saving who were out of the *realm* of *Great Britain;* and in that manner was the act of parliament understood by the judge in *King vs. Walker,* in 1 *Blk. Rep.* 286; which I think can be plainly understood.

Mr. Jusice *Dennison* says, "he must be beyond the seas—that is the old and true expression," to signify being out of the realm. The common law expression was beyond the four seas; but beyond the seas, and beyond the four seas, in the language of the laws of *England,* meant the same thing.

Mr. Justice *Wilmot* says, "there is no such kingdom as *England now,* the plaintiff therefore while in *Scotland* was not out of *this* realm"—the realm of *Great Britain.*

With reference to *England* before the union, *Scotland,* although not actually beyond the seas, was considered as beyond the seas because out of the realm.

Oct. 1802

Pancoast
vs.
Addison

The situation of *England* and *Scotland* before the union, was similar or nearly so to the actual situation of *Maryland* and *Pennsylvania*. The latter were separated by an ideal or mathematical line—the former were different realms or sovereignties—governed by different laws.

*Scotland*, before the union, was beyond the seas in legal contemplation, although with *England* it was encompassed by the four seas—Why? because it was out of the realm of *England*.

The adoption of the statute in this state is the same as re-enacting it. The statute of limitations with the savings, is a beneficial law for the purpose of quieting possessions, &c. but without the savings it would be a rigorous and unjust law. It does not extend to persons out of the state who cannot be supposed to know the laws.

The court are of opinion, that the lessor of the plaintiff is within the saving of the statute of 21 *James I. ch.* 16—and that the statute of the 32 *Henry VIII. ch.* 2, s. 2, does not extend to the state of *Maryland*, the court not knowing of any judicial decision by which the same has been adopted and introduced into this state as the law thereof. The defendant excepted.

2. The plaintiff then offered to read in evidence to the jury the deposition of *Mary Hewes*, the daughter of *William Pancoast*, who was the father of *Caleb Pancoast*, who was the father of *William Pancoast*, the lessor of the plaintiff. The defendant's counsel objected to the reading of that part of the deposition contained in the following words, as incompetent and inadmissible testimony, viz. "That the land lay in "*Maryland* between *Belle Haven* and *George Town*; "that some time after the death of the brother in "*Maryland*, the family in *The Jersey* were informed "of his death, and that he died without a will. He "died a bachelor; and it was generally reputed in the "family that the land he died possessed of was held "by the family in which he had lived as aforesaid. "This knowledge this deponent gained in *Jersey*, and

*General reputation and tradition in a family, of the death of one of its members, and of his having died possessed of lands, admitted in evidence in an ejectment by another of the same family claiming under the deceased*

"it was the common talk, reputation, and tradition in "the family."

BUT THE COURT [*Chase,* Ch. J. *Duvall* and *Done,* J ] overruled the objection, and admitted that part of the said deposition to be read to the jury. The defendant excepted.

3. The defendant then objected to the reading in evidence of that other part of the deposition of *Mary Hewes,* which is in these words: "She has heard her "father, and others of the family, now dead, say, "that her grandfather, and *Joseph Pancoast* his broth-"er, emigrated from *England*; that before they emi-"grated they had a younger brother who had been "bound apprentice to a mechanic; and as well as she "recollects, to a watchmaker in *London*; that this "brother was kidnapped from *London*, and brought to "*Maryland,* and sold by the captain of the vessel to "some gentleman in *Maryland*," &c.

*So also that some of the ancestors emigrated from England, &c. that another of them had been kidnapped in London and sold in Maryland*

BUT THE COURT, [*Chase,* Ch. J. *Duvall* and *Done,* J.] overruled the said objection, and admitted that part of the said deposition to be also read in evidence to the jury. The defendant excepted.

4. The plaintiff then offered in evidence the testimony of *Edward Pancoast,* taken under a commission which issued in this cause. The defendant then offered evidence to prove that the said *Edward Pancoast* was the son of *William Pancoast,* who was grandfather of the lessor of the plaintiff, and under whom the lessor of the plaintiff deduced title to the land mentioned in the declaration as heir at law. He objected to the reading in evidence to the jury the answers of the said *Edward Pancoast* to the 5th, 6th, 7th, 8th, and 9th interrogatories, put to him under the said commission, on the ground that the said *William Pancoast,* from whom the witness derived his information, was interested; and he offered to prove that the said *William Pancoast,* at the time he gave the said information, was heir at law, and claimed title to the land in the declaration mentioned, and for

*Hearsay, derived from a person who was then heir at law and claimed the land, admitted as legal evidence for the plaintiff to prove pedigree, descent, &c*

Oct. 1802

Pancoast
vs
Addison

which this suit is brought. Which said interrogatories and answers are as follow:

"*Fifth Interrogatory.* Did you know, or have you ever heard or been informed, and how and by whom, of one *William Pancoast,* the eldest, formerly of *Burlington* county, *Jersey*; if yea—then was he a native of *America,* or of what country was he a native; had he any brothers and sisters; if yea, what were their names, where did they live, when did they die; did they leave any issue, and what issue did they leave?"

*Answer.* "That he neither knew, or ever heard of any *William Pancoast* older than *William Pancoast,* the great grandfather of *William Pancoast* the plaintiff; but that the great great grandfather of *William Pancoast,* the plaintiff, and the great grandfather of this affirmant, was named *John Pancoast,* who, as this affirmant has been informed by his father, originally came from *England,* and settled in the township of *Mansfield,* in the county of *Burlington,* in the state of *New Jersey,* and that he was a native of *England,* and that the said *John Pancoast* had no brothers or sisters, as this affirmant ever heard of, but that he brought with him two sons, *William* and *Joseph;* that he had a third son by the name of *James,* who was kidnapped in *England,* brought to *Maryland* in *America,* and sold, as this affirmant hath been given to understand by his father."

*Sixth Interrogatory.* The same, with respect to *James Pancoast,* as the 5th respecting *William.*

*Answer.* "That he hath been informed by his father, that *James Pancoast* mentioned in the answer, to the 5th interrogatory, was a native of *England;* that he bought a tract of land and settled in *Maryland,* on the *Potomak;* that he came afterwards to see his brothers *William* and *Joseph,* in *New Jersey;* that he concluded to sell his lands in *Maryland,* and come and live in *New Jersey;* that he returned to Maryland, and was afterwards drowned in the river *Potomak,* as this affirmant hath been given to understand by his father; that he never heard of his having any heirs but his two brothers *William* and *Joseph.*"

*Seventh Interrogatory.* "Do you know, or have you ever been informed, and how or by whom, of the *Pancoast* family; if yea, from what country did they emigrate to this; where did the first emigrants of that family settle in *America,* and who are the descendants of that family? Relate as fully as you can."

*Answer.* "That he has been informed by his father, that the *Pancoast* family emigrated from *England* to *America;* that the first emigrants settled in the township of *Mansfield,* in the county of *Burlington,* in the state of *New Jersey,* except *James Pancoast,* who settled in *Maryland,* as mentioned in the answer to the sixth interrogatory."

*Eighth Interrogatory.* Answered by the answers to the 5th and 6th interrogatories.

*Ninth Interrogatory.* Whether *James Pancoast* died without issue, &c. and who was his nearest relation of the whole blood?

*Answer.* "That he hath been informed by his father that the said *James Pancoast* died without issue; that his nearest relations of the whole blood were his two brothers *William* and *Joseph.*"

BUT THE COURT [*Chase,* Ch. J. *Duvall* and *Done* J.] were of opinion, that the said testimony was legal and competent, and permitted the same to be read in evidence to the jury. The defendant excepted.

Verdict and judgment being for the plaintiff, the defendant appealed to the Court of Appeals, where the case was entered *Agreed,* at June term 1805.