## BERNARD MAURICE vs. JOHN L. WORDEN.

*Act of* 1847, *ch.* 158—*Question whether the ground ceded to the United States for a Naval Academy, can be considered "out of the State" within the meaning of the Act of Limitations—. Validity of a reservation by the State of the right to execute Process within the ceded territory—Construction of the Act of Limitations, with reference to a Defendant's absence from the State during a part of the period within which Action must be brought—Art.* 57, *sec.* 4, *of the Code.*

In an action of assumpsit in which the Statute of Limitations was pleaded, the plaintiff replied: 1st. That at the time of the cause of action aforesaid accruing to him against said defendant, the said defendant was absent out of the State, to wit: within the territory ceded to the United States of America by the State of Maryland, under and by virtue of the Act of Assembly of said State, of the year 1847, ch. 158; and that this action was commenced within three years after the presence of said defendant within this State, and out of the aforementioned ceded territory. 2nd. That after the contracting of the said debt on the part of the said defendant, whereby the said cause of action accrued to said plaintiff, and within *three years* after, the said defendant absented himself from the State, whereby the said plaintiff was at an uncertainty of finding out said defendant or his effects; nor did the said defendant at the time of so leaving the State, leave effects sufficient and known for the payment of his just debts in the hands of any person who assumed the payment thereof to his creditors, and this action was brought within three years after defendant's return to this State; nor had the defendant been in this State for three years in all after the aforesaid cause of action accrued to the said plaintiff, at the time this suit was commenced. On demurrer, it was HELD:

1st. That the power reserved to the State by the Act of 1847, ch. 158, to have its process served in the territory by that Act ceded to the United States for the Naval Academy, is valid and operative.

2nd. That as process from the Circuit Court for Anne Arundel County could reach the defendant while residing there, he could

not *pro tanto* be considered "out of the State" within the meaning of the Act of Limitations.

3rd. That the allegation in the second replication, that the defendant within three years from the accrual of the cause of action left the State, whereby the plaintiff "was at an uncertainty of finding the said defendant or his effects," was not a sufficient answer to the plea.

4th. That sec. 4, of Art. 57, of the Code, on which said replication was based, must be construed with reference to the time and circumstances under which the Act of 1715, ch. 23, from which it was codified, was passed, as set forth in the recital by way of preamble to the 4th sec. of that Act; and in subordination to well established rules in reference to Limitations.

5th. That the plaintiff could not, as attempted by the last part of the second replication, avoid the Act of Limitations by going into a calculation of time, showing that the defendant had not been within the State *precisely three years in all*, from the time the cause of action arose, to the time of suit brought.

APPEAL from the Circuit Court for Anne Arundel County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT and ALVEY, J.

*Charles J. Bonaparte* and *John Thomson Mason*, for the appellant.

The plaintiff's first replication is sufficient to remove the bar of the statute, under sec. 5, of Art. 57, of the Code, unless the averment "that at the time of the cause of action aforesaid accruing against said defendant, the said defendant was absent out of the State," is vitiated by the further averment, "to wit: within the territory ceded to the United States of America by the State of Maryland, under and by virtue of the Act of Assembly of the said State, of the year 1847, chap. 158." In other words, the question before the Court is, whether the United States

reservation at Annapolis is " out of the State," in the contemplation of Art. 57, of the Code?

" Out of the State," or equivalent words in the Statute of Limitations, mean " beyond the limits of the State's political sovereignty." *Smith's Adm'rs vs. Heirs of Bond,* 8 *Ala.,* 386, 388, 390; *Sleight vs. Kane,* 1 *Johns. Cas.,* (*N. Y.,*) 76, 81; *Bank of Alexandria vs. Dyer,* 14 *Pet.,* 141.

Territory acquired by the United States under the provisions of Art. 1, sec. 8, of the Constitution, is beyond the limits of the State's political sovereignty. *Story on the Constitution,* sec. 1227; *Sinks vs. Reese,* 19 *Ohio St. Rep.,* 306: *Chauvenet vs. Comm'rs of A. A. Co.,* 3 *Md.,* 259; *Commonwealth vs. Clary,* 8 *Mass.,* 72, 77; *Mitchell vs. Tibbetts,* 17 *Pick.,* 298; 1 *Metc.,* (*Mass.,*) 580.

Consequently such territory is " out of the State."

The proviso in the above-mentioned act of cession, " that all civil  *  *  *  *  *  *  * process may be executed therein in the same way and manner as though this cession and consent had never been made and granted," was relied on in argument before the Circuit Court as avoiding this conclusion.    But the service of process, although a *negative,* is not an *affirmative* test of sovereignty; *i. e.* the State is not sovereign where its writ does not run.    *Smith's Adm'rs vs. Heirs of Bond,* 8 *Ala.,* 386, 388, 390; *Sleight vs. Kane,* 1 *Johns. Cases,* (*N. Y.,*) 76, 81, but its writ may, by agreement or sufferance, run into territory over which it is not sovereign.    Such process is *quoad hoc* that of the true sovereign.    *Story on the Constitution, sec.* 1225; *Rawle on the Constitution,* 238; 1 *Kent's Comm.,* (*12th Ed.,*) 429, 430; 3 *Md.,* 263, (*argument of Mr. Donaldson;*) *United States vs. Cornell,* 2 *Mason,* 60, 65, 66; and no more affects the territorial sovereignty than do the privileges accorded to foreign Courts by Art. 37, sec. 33, of our Code, and sec. 871, of the U. S. Rev. Statutes.    The question whether the Statute of Limitations *ought not* to enure in favor of residents upon territory open to the civil process of the State, is, of course, one for the Legislature alone to pass upon.

The plaintiff's second replication requires that this Court should construe (for the first time, so far as his counsel are aware,) sec. 4, of Art. 57, of the Code. The section does not specify *any time* after the contracting of a debt within which the defendant's absence will call it into effect, so that a literal construction might make such an absence revive a claim already barred. This question is, however, avoided in this case by the express averment in the replications—and within three years thereafter. The qualifying proviso in the section as to the protection gained by "leaving effects sufficient and known for the payment of the debtor's just debts in the hands of some person who will assume the payment thereof to his creditors," having been carefully negatived in the replication, it would seem to be too clear for argument that, upon the admission of the demurrer, the appellee is not to "have any benefit of any limitation * * * * * * contained " in Art. 57 of the Code. The exact meaning of this clause may possibly admit of some doubt; but only three constructions can possibly be put upon it.

1. It may mean that such an absence as it mentions shall *forever* debar the debtor from relying on limitations. *Nelson vs. Beveridge*, 21 *Mo.*, 22, 23, 24. In this view the plaintiff's suit would be in time whenever brought.

2. Or it may mean that the creditor shall have until *three years after* the debtor's return to this State to bring his suit. *Cook's Ex'r vs. Holmes*, 29 *Mo.*, 61, 63, 64; *Armsby vs. Letcher*, 3 *Bibb*, (*Ky.*,) 269, 270, 271; *Prather vs. Ross*, 10 *B. Mon* , (*Ky.*,) 15, 16.

This construction is fully met by the averment in the replication—" and this action was brought within three years after the defendant's return to this State," which is, of course, admitted by the demurrers to be true.

3. Or this section may be construed as equivalent to the provision contained in the statutes of limitations of nearly

every other State in the Union, (although *not* in the English statute,) that the time a debtor is absent from the State shall not be computed in his favor. *Fisher vs. Phelps, Dodge & Co.,* 21 *Tex.,* 551 ; *Berrien vs. Wright,* 26 *Barb.,* 215 ; *Pope's Ex'r vs. Ashley's Ex'r,* 13 *Ark.,* 262 ; *Gilman vs. Cutts,* 3 *Foster,* (*N. H.,*) 376 ; *Chenot vs. Lefevre,* 3 *Gilm.,* (*Ill.,*) 637 ; *Brigham vs. Bigelow,* 12 *Metc.,* 268 ; *Mudeville vs. Huston,* 15 *La. Ann.,* 281 ; *Wells & Sappington vs. Shreve's Adm'rs,* 2 *Houst.,* (*Del.,*) 329 ; *Johnson vs. White, T. U. P. Charlton,* (*Ga.,*) 140 ; *Sullenberger vs. Guest & Mills,* 14 *Ohio,* 204.

To cover this point, the plaintiff has appended to his replication the statement—" Nor had the defendant been in this State for three years *in all* after the said debt had been so contracted, as aforesaid, at the time this suit was commenced."

A statutory right or exemption is properly pleaded in the words of the statute—*Ford vs. Babcock,* 2 *Sandf. S. C. R.,* (*N. Y.,*) 518, 523 ; 10 *B. Monroe,* 16—even if it should be conceded that sec. 4 contemplates a *fraudulent* absence. But this is a pure assumption, unsupported by either the language of the section, the preamble which originally preceded it, 1 *Dorsey's Laws of Md.,* 10 *and* 109 ; or the analogy of similar statutes in other States, 10 *B. Mon.,* 16.

So soon as a debt has been contracted, limitations, under Article 57, begin to run, provided the debtor is not " absent out of the State," under section 5 ; and unless the debtor is then *in* the State, he cannot possibly afterwards " absent himself from " it. The entire provision becomes, therefore, nugatory, if it is to be construed with respect to the rule, that when Limitations have commenced to run, a subsequently accruing disability will not arrest them, or, at best, is merely the equivalent of section 5— a construction not only irreconcilable with its tenor, but directly contradicted by the history of the two Acts thus

codified.  1 *Dorsey's Laws of Md.*, 10 and 109; *Hysinger vs. Baltzell*, 3 *G. & J.*, 159.

The rule in question, however, is merely a rule of statutory construction applied to section VII of the Statute of James I, *Alexander's Br. Stat.*, 449, and which cannot defeat the expressed or clearly implied intention of the Legislature.  21 *Texas*, 556; 29 *Missouri*, 63, 64; *Bennett vs. Devlin*, 17 *B. Mon.*, 359, 362; 3 *Foster*, (23 *N. H.*,) 376, 382, 384; *Coventry vs. Atherton*, 9 *Ohio*, 34, 35, 36.

That the Legislature which enacted this section did not intend it to be thus construed is as certain, upon the face of the statute, as any proposition can be, not expressed *in totidem verbis;* and when we consider the avowed purpose of the original Act, its evident equity, and the motives of public policy which have induced a large majority of our sister States to adopt provisions more distinctly repudiating the rule in question in similar cases,—See *Statute Law of Alabama, Arkansas, Kentucky, Texas, Massachusetts, New Hampshire, Louisiana, Delaware, Florida, Illinois, Ohio, Missouri, New York, Georgia, Virginia,*—it seems little less than monstrous that the Courts should be asked to repeal, by judicial legislation, a clearly expressed and carefully guarded exemption from the bar of a statute always *strictissimi juris,* and never favored by the law.

*J. Wirt Randall* and *John H. Thomas,* for the appellee.

The appellee's demurrer to the first replication to these pleas was properly sustained, because the State of Maryland, by the Act of Assembly which ceded to the United States the territory referred to in said replication, expressly reserved over it jurisdiction concurrent with that of the United States.  It was, therefore, part of the State of Maryland for jurisdictional purposes.  The defendant, while there, was liable to the civil process of its Courts, and limitations ran in his favor, as if he had been elsewhere in the State.  *Act of* 1847, *ch.* 158; *Act of* 1858,

*ch.* 185, *sec.* 1; *Act of* 1866, *ch.* 68; *Act of* 1867, *ch.* 294, *sec.* 3; *Act of* 1867, *ch.* 387; 1 *Kent's Com.*, 429; 2 *Story on Constitution, secs.* 1225, 1227; *Bank of Alexandria vs. Dyer,* 14 *Peters*, 141; *Rhodes vs. Bell,* 2 *Howard*, 405; 2 *Greenleaf on Evidence, sec.* 437; *Mitchell vs. Tibbetts,* 17 *Pick.*, 298, 301; 1 *Metc.*, 580, 582, 583; *Hysinger vs. Baltzell,* 3 *G. & J.*, 159.

The plaintiff's second replication to the third and fourth pleas of the defendant and the demurrer thereto, involves the construction of sec. 4, Art. 57, of the Code. This section embodies secs. 4 and 5, of the Acts of 1715, ch. 23, and 1765, ch. 12. *Mayer's Digest,* 549; 1 *Dorsey's Laws of Md.*, 9, 10 *and* 109.

The language of sec. 4, of the original Act, shows that it was intended to apply "to persons absenting the province, or wandering from county to county, *until the time* by the late Act, for the reasons and purposes aforesaid limited and allowed, *were expired;*" and the *absence* or *leaving*, according to the express words of sec. 5, of the original Act, must be an absence or "leaving this province for *the time and term in this Act limited;*" or as it is codified in sec. 4, Art. 57, of the Code, "leaving this State for the *time herein limited.*"

The undoubted rule of law is, that when the Statute is once set in motion, no subsequent disability can arrest it, and only a plain statutory exception, presumptions being in favor of the bar. Neither the death of the defendant, *Stewart vs. Spedden,* 5 *Md.*, 448. Nor any subsequent disability of the plaintiff. *Hertle vs. McDonald,* 2 *Md. Ch. Dec.*, 128; 3 *Md.*, 366; *Dugan vs. Gittings,* 3 *Gill,* 139; *Young vs. Mackall,* 4 *Md.*, 362; *Hogan vs. Kurtz,* 4 *Otto,* 773. Particularly no recurring disability of plaintiff. And so of a recurring absence of defendant, the *term* or *time* of absence is but *one* term or time, a continuous absence so long as it lasts, and the Statute set in motion by the

19 v. 52.

return of defendant, is not stopped even by another absence. *Angell on Lim.*, (*6th Ed.*,) *secs.* 206, 207, 209, *and notes; Faw vs. Roberdean,* 3 *Cranch,* (*S. C.*,) 174; *Hysinger vs. Baltzell,* 3 *G. & J.*, 158; *Clark's Ex'rs vs. Trail's Adm'r,* 1 *Met.*, (*Ky.*,) 40; *Mitchell vs. Berry, Ibid.*, 610; *Ingraham & Read vs. Bowie,* 33 *Miss.*, 17; *Cole vs. Jessup,* 2 *Barbour,* 313; *Drew vs. Drew,* 37 *Me.*, 392; *Langdon vs. Doud,* 6 *Allen,* (*Mass.*,) 423; *Sage vs. Hawley,* 16 *Conn.*, 112.

The language of the Statute in some States has carried their Courts to a different conclusion; but in no case has ever such general language as our Statute contains, been so construed, and the particular phrases above quoted are peculiar to our law and clearly show that the general rule and the doctrine laid down in the above cases, peculiarly apply to our Statute.

A contrary view would torture words which speak of an *absence from* the State of three years, or *until* three years have *expired,* into meaning a *presence within* the State of three years.

BRENT, J., delivered the opinion of the Court.

The questions presented upon this record are raised by a demurrer to the replications filed by the appellant, who was plaintiff below, in answer to a plea of the Statute of Limitations.

The declaration is in *assumpsit.* The defendant pleaded not indebted, *non assumpsit* and Limitations. Issue was taken to the first and second pleas, and to the plea of Limitations the plaintiff rejoined,

First, that at the time of the cause of action aforesaid, accruing to him against said defendant, the said defendant was absent out of the State, to wit, within the territory ceded to the United States of America by the State of Maryland, under and by virtue of the Act of Assembly of the said State of the year 1847, ch. 158; and that this

action was commenced within three years after the presence of said defendant within this State, and out of the aforementioned ceded territory.

Second, that after the contracting of the said debt on the part of the said defendant, whereby the said cause of action accrued to said plaintiff, and within *three years* after, the said defendant absented himself from the State, whereby the said plaintiff was at an uncertainty of finding out said defendant or his effects; nor did the said defendant, at the time of so leaving the State, leave effects sufficient and known for the payment of his just debts, in the hands of any person who assumed the payment thereof to his creditors, and this action was brought within three years after defendant's return to this State; nor had the defendant been in this State for three years in all after the aforesaid cause of action accrued to the said plaintiff at the time this suit was commenced.

The demurrer was sustained by the Circuit Court for Anne Arundel County, and the plaintiff appealed.

The 5th section of Article 57, of the Code, provides, that if any person liable to any action shall be absent out of the State at the time when the cause of action may arise or accrue against him, he shall have no benefit of the limitation contained herein, if the person who has the cause of action shall commence the same after the presence in this State of the person liable thereto within the terms herein limited.

And the question arises, what is the meaning of the terms, there used, " out of the State," as applicable to this case?

It would be a useless task to review the several cases which have been cited, in which the words "beyond the seas" and "out of the State," have been construed. There is in reality no conflict among them, and they all tend to ascertain whether or not in the particular case the party could be reached by the process of the Court. We have

found nowhere the law in this respect more correctly or succinctly stated than it is by Mr. Greenleaf in his work on Evidence. In the 2nd volume, section 437, it is said, "The disability arising from absence out of the country, is usually expressed by being *beyond sea ;* but the principle, on which this exception is founded, is, that no presumption can arise against a party for not suing in a foreign country, nor until there is somebody within the jurisdiction whom he can sue; and therefore, the words 'beyond sea,' in the statute of any State are expounded as equivalent to being 'out of the State,' and receive the same construction. And the latter form of words is held equivalent to being 'out of the actual jurisdiction;' that is, *beyond the reach of process ;* so that where a part of the territory of a State, in time of war is actually and exclusively occupied by the enemy, a person within the enemy's lines is out of the State, within the meaning of the Statute of Limitations." The case of *Sleight vs. Kane,* 1 *Johns. Cases,* 76, is cited as a leading case upon this doctrine. There a part of the territory of the State of New York was occupied and held by British troops. The maker of the note sued upon was within their lines, at the time when it was claimed limitations commenced to run in his behalf. It was held, notwithstanding the terms of the Statute were "out of the State," that he could not avail himself of its provisions, for although within the territorial limits of the State he was beyond the process of its Courts.

Does the replication in this case allege any fact, which shows that the appellee was beyond the reach of process from the Courts of this State, at the time the cause of action accrued against him?

The Act of 1847, ch. 158, specially referred to in the replication as the Act by which the State of Maryland ceded to the United States the ground upon which the Naval Academy at Annapolis is established, by express

terms, reserves to the State the right to serve civil process within its limits. This reservation is plainly set out, in a proviso to the first section, as follows: *"provided always, and the cession and jurisdiction aforesaid are granted upon the express condition, that this Commonwealth shall retain a concurrent jurisdiction with the United States in and over the said lands and ceded territory, so far, as that all civil, and such criminal process as may issue under the authority of this State, against any person or persons charged with crimes committed without said lands and ceded territory, may be executed therein in the same way and manner as though this cession and consent had never been made and granted, except so far as such process may affect the real and personal property of the United States within the said ceded territory."*

A similar provision is found in the Acts of other States ceding a portion of their territory to the United States for forts, hospitals, navy yards and so on, and no case seems to have arisen in which the reservation has been declared invalid. On the contrary the right, reserved to the State to serve its process in the cases enumerated, has been regarded as a wise precaution, that the territory thus ceded may not be made a refuge and sanctuary for debtors and criminals. The cases, relied upon by the counsel for the appellant, of *Mitchell vs. Tibbetts,* 17 *Pick.,* 298, 1 *Met., (Supplement)* 580, and *Sinks vs. Reese,* 19 *Ohio,* 306, are not in opposition to the power of the State to reserve the right of process in ceded territory, but the inference to be drawn from them is strongly in support of it. The rights claimed in each of them were denied, and referred to as not being within the power reserved by the State in the Act ceding the land in question to the United States. In the case in 17 *Pickering,* the question was the power of the State of Massachusetts to enforce a penalty against a vessel for bringing stone from the State of Maine to the Navy Yard at Charlestown, without having

complied with the requirements of a statute of the State. The case in 1*st* *Metcalf*, involved the right of a party, living within the ceded territory, to the use of the public schools of the State for the education of his children, and the case in 19*th* *Ohio*, the right of the inmates of the United States Asylum in that State to be considered as residents of the State, and as such to exercise the right of voting.

We are satisfied that the power, reserved by the State to have its process served in the territory ceded to the United States for the Naval Academy, is valid and operative. And as the process from the Circuit Court for Anne Arundel County could reach the appellee while residing there, he cannot *pro tanto* be considered "out of the State" within the meaning of the Act of Limitations. The demurrer to this branch of the appellant's replication will therefore be sustained.

The other replication of the appellant rests upon the 4th sec. of Art. 57 of the Code. The provisions of this section, codified from the old Act of 1715, ch. 23, secs. 4 and 5, are peculiar to this State. We know of no case in practice where its provisions have been relied upon to avoid the running of the Statute. The profession does not seem to have relied upon its rather ambiguous terms, and it is now for the first time brought before the consideration of this Court.

This section must be construed with reference to the time and circumstances under which the law from which it is codified was passed, and in subordination to well established rules in reference to Limitations.

The recital by way of preamble to the section in the original law shows, that it was passed to reach the cases of persons who absented themselves from the province, or wandered from county to county for the reason of availing themselves of the time limited in the law. After the debt was contracted or the cause of action

arose, they so moved from place to place or left the pro-
vince as to conceal from the creditor their place of abode;
and no reasonable time was allowed him in which to
bring his action. It was to remedy this evil that secs. 4
and 5 of the Act of 1715, were adopted as a part of the
Law of Limitations in the province, and in that sense
they must now be understood, as they are codified in the
4th sec. of Art. 57 of the Code.

The replication of the appellant alleges that *within three
years* from the accrual of the cause of action, the appellee
left the State, whereby the appellant "was at an uncer-
tainty of finding out the said defendant or his effects."
This allegation, if issue had been joined by the appellee
instead of his demurring, would have been supported by
proof, that the appellee after being in the State subject to
process for two years and eleven months, or even a day
short of three years, had then left the State, and the cred-
itor was thereby put to an uncertainty of finding him or
his effects. This interpretation cannot be given to the
section in question. *Hysinger vs. Baltzell,* 3 *G & J.,*
158.

When the Statute has once commenced to run, by the
liability of the debtor to the service of process, no subse-
quent disability will arrest it, unless otherwise provided
by a plain and unambiguous statutory exception. *Dugan
vs. Gittings,* 3 *Gill,* 139 ; *Stewart vs. Spedden,* 5 *Md.,* 448 ;
*Hogan vs. Kurtz,* 4 *Otto.,* 773 ; *Angell on Lim.,* secs. 196
*and* 197, *and authors there cited.*

By the interpretation sought to be given to the section
in question, any absence of a debtor from the State in a
place unknown to the creditor would arrest the Statute,
although such absence was but of short duration, and had
occurred but just previous to the expiration of the time lim-
ited. This construction cannot be adopted. But the
section must be understood as applicable to the cases
only, which it was manifestly intended to reach, when

the original law, from which it is codified, was en-acted.

Another objection to this replication is also fatal upon demurrer. It is charged that the appellee had not, after the accrual of the cause of action and before suit brought, been in this State *for three years in all.* That every ab-sence from the State is to be counted against a defendant creditor, has not been received as accepted law. On the contrary, as before seen, when the Statute has once applied, its running is not arrested unless by some plain statutory exception. We do not think that under any fair construc-tion of any part of the Act of Limitations in this State a plaintiff can avoid the Act, by going into a calculation of time and showing that the defendant had not been within the State *precisely three years in all* from the time the cause of action arose to the time of suit brought. This the replication in the present case is intended to effect, and in this respect must be considered as fatally defective.

We do not think the Circuit Court committed any error in its rulings, and we shall affirm its judgment.

*Judgment affirmed.*

(Decided 15th July, 1879.)