(Decided June 19th, 1895.)

---

## MASON, CHAPIN AND COMPANY *vs.* THE UNION MILLS PAPER MANUFACTURING COMPANY.

*Limitations—Code, Art. 57, sec. 5—Absence from the State of Defend-
ant—Attachment suit by Non-resident against Non-resident.*

A non-resident defendant who voluntarily appears in an attachment
suit cannot rely upon the Statute of Limitations, although the plain-
tiff is also a non-resident, unless the defendant has been within this
State for the statutory period after the cause of action accrued.

A resident of another State has the same right to maintain an action in
the Courts of this State that is possessed by a resident of this State,
and if the suit be against a non-resident debtor, the defendant has no
greater right to plead limitations against him than he has when the
plaintiff is a resident of this State.

Where both plaintiff and defendant are non-residents and the cause of
action sued on is a contract made and to be performed in another
State, the plaintiff is entitled to the benefit of Code, Art. 57, sec. 5,
which provides that if a defendant is absent from the State when the
cause of action accrues, he shall not be entitled to rely upon limita-
tions if the plaintiff shall commence the action within the statutory
period after defendant's presence in this State.

Appeal from the Superior Court of Baltimore City. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*William Reynolds* for the appellants.

The universal construction put upon similar statutes in other States is that limitations do not begin to run until there may be found within the jurisdiction of the forum whose statute is pleaded a person capable of being sued. *Hysinger* v. *Baltzell*, 3 G. & J. 161 ; *State, use of Stevenson*, v. *Reigert*, 1 Gill, 1, 32 ; *Kirkland* v. *Krebs*, 34 Md. 97 ; *Wood on Limitations*, §§ 224 to 248. In the case of *Olcott* v. *Tioga R. R. Co.*, 20 N. Y. 210, it was held that a foreign corporation sued in New York could not avail itself of the Statute of Limitations there, which provided that " if at the time the cause of action shall accrue against any person he shall be out of the State, such action may be commenced within the time before limited after the return of such person into the State." See also *Wood on Limitations*, § 250, and cases there cited ; also, recent case of *Larson* v. *Aultman & Taylor Co.*, 86 Wisc. 281 ; 39 Am. St. Rep. 893.

Under the Massachusetts statute, which provides that, " if at the time when a cause of action accrues against a person he is out of the Commonwealth, the action may be commenced within the time herein limited therefor after he comes into the Commonwealth," non-resident defendants sued by non-resident plaintiffs upon foreign contracts were held not entitled to the benefit of the statute in the following cases: *Bulger* v. *Roche*, 11 Pick. 36–39 ; *Getz* v. *Voelinger*, 99 Mass. 504 ; *McCann* v. *Randall*, 147 Mass. 81 ; 9 Am. St. Rep. 666, So in New York ; *Ruggles* v. *Keeler*, 3 Johns. 263 ; 3 Am. Dec. 482 ; *Power* v. *Hathaway*, 43 Barb. 214.

*Geo. Dobbin Penniman* (with whom were *John K. Cowen* and *E. J. D. Cross* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The question presented by this appeal relates to the construction of section 5 of Article 57 of the Code, title, " Limitations of Actions."   Both parties are non-residents of this State, the defendant being a Pennsylvania corporation, and the plaintiffs are citizens of and doing business in the State of Rhode Island, under the name of Mason, Chapin and Company.   The plaintiffs sued out of the Superior Court of Baltimore City, on the 7th February, 1894, a foreign attachment against the defendant, the cause of action being a breach of contract by the latter.   This attachment was laid in the hands of the Baltimore and Ohio Railroad Company as garnishee, and the defendant corporation voluntarily appeared in the short note case and filed four pleas, upon three of which issue was joined, and to the fourth, which was the plea of limitations, the plaintiffs replied " that the said defendant was, at the time said cause of action accrued to the plaintiffs, absent from the State of Maryland, to-wit, in the State of Pennsylvania ; and thereafter was and continued to be and remained absent from this State up to within three years before bringing this suit."   To this replication the defendant rejoined :  " That the alleged cause of action accrued more than three years before the institution of this suit outside of the State of Maryland, and at the time of the accruing of said cause of action, both the plaintiff and defendant were non-residents of the State of Maryland and have never ceased to be non-residents, and said contract, on which this suit was instituted, was not made in this State, nor was any part of it to be peformed in this State." The plaintiffs demurred to this rejoinder, and the Court below overruled the demurrer and gave judgment therein in favor of the defendant.   From this judgment the plaintiffs have appealed.

The precise question is whether section 5 of Art. 57 of the Code applies to cases where both plaintiff and defendant are non-residents, and where the cause of action accrued outside of this State, and the contract sued on is a foreign contract.

On the part of the plaintiffs it is contended that they have the same rights and occupy the same position as to the right to rely upon the provisions of our Code relative to limitations of actions that any resident of this State has, and that if a citizen of Maryland could not be successfully met by a plea of the statute by a foreign debtor, who is a resident of Pennsylvania, no more can such a plea be so set up against them.   On the other hand, the defendant contends that the provisions of section 5 of Article 57 were made for and relate alone to debtors who are citizens of Maryland, and that a non-resident creditor who elects to bring a non-resident debtor into the Courts of Maryland in order to recover on a foreign contract, cannot avoid a plea of limitations by pleading the absence out of the State of such non-resident, in the terms of said section 5.

It will be observed that the validity of the replication of the plaintiff must depend upon the construction placed on section 5 of Art. 57.   That section provides that " if any person liable to any action shall be absent out of the State at the time when the cause of action may arise or accrue against him, he· shall have no benefit of the limitation herein contained, if the person who has the cause of action shall commence the same after the presence in this State of the person liable thereto within the times herein limited." This language is certainly broad enough to include within its terms the defendant.   It could not be much broader than it seems to be made by the words, "any person liable to any action."   But comprehensive and all-embracing as it may seem to be, yet the language used in the statute must be construed and taken in the sense in which it appears to be used by the Legislature.   The defendant suggests that an investigation or historical study of the origin and growth of the statute will show that its contention is the proper one, but after a careful examination of the old statutes, the original Statute of 21 James, 1, chapter 16, and 4 and 5 Anne, chapter 16, section 19, as well as the several statutes adopted by this State, all of which are based upon and in many re-

spects similar to or modifications of the provisions of the old English statutes just referred to, we have arrived at a different conclusion.

In the Statute of James there was a provision in favor of " any person or persons " " beyond the seas," and the same provision appeared on our own statute until 1818, when the Act of that year, ch. 216, repealed it.    It is true that the words " any person," &c., " beyond the sea," both in the Statute of James and our old statute, related to persons who were entitled to sue, but there was a similar provision in regard to defendants to be found in 4 and 5 Anne, ch. 16, sec. 19, by which it is provided that the statute should not run in their favor during their absence from the realm.    And so, the words in section 5 of Art. 57, Code, relate to absent debtors, and the whole section is doubtless a modification of section 19 of the Statute of Anne.    If these words, or similar ones, have been uniformly held, when used in the English Statutes of Limitations, from which ours are derived, to include both residents and non-residents, subjects and foreigners alike, then a like construction should be given to them, or similar words, when they appear. in our statutes. In *Angel on Limitations*, sec. 21, the correct rule is laid down for construing these statutes.    He says, in speaking of the Statute of James I, as modified by that of 4 and 5 Anne, " where any difference appears between the provisions of that statute in respect to personal actions and those of American Statutes of Limitations, it will be seen to be more in words than in substance, the end of one and all of them being one and the same."    *    *    *    " And the mere change of phraseology in the revision of the statute before in force will not work an alteration in the law previously declared, unless it undisputably appears that such was the intention of the Legislature," (see authorities cited in note.) In the case of *Strithhorst* v. *Gracme*, 2 W. Bl. 723, which was an action of assumpsit, the defendant pleaded non-assumpsit and limitations.    The plaintiff, who was a foreigner, replied that he had been beyond seas, &c., in Germany and

so remained, &c.   Counsel argued that the replication was bad, because if the law stood so, foreigners who reside always out of England would have the same or greater advantage than natives, and that the exception in the statute was meant for Englishmen who occasionally go beyond seas.   But WILMOT, LORD C. J., said, "The exception in the statute is general, and therefore there must be judgment for plaintiff."   This case is also reported in 3 Wilson, 145, and the opinion of the Chief Justice is there given more fully to the same effect.   Also *Le Veux* v. *Berkley*, 5 Queen Bench, 836, which was tried before Lord Denman.   And in the later case of *Lafoude* v. *Ruddock*, 24 E. L. & Eq. 239, it was again contended that the proviso of section 7 of Stat. 21, James 1, relating to creditors "beyond the seas," could not apply to foreigners coming to England for the first time.   JERVIS, C. J., again applied the liberal construction and said:   "The proviso in favor of persons under disabilities in the Statute 21 James, ch. 16, applies as well to foreigners who have never been in this country, as to parties residing abroad at the time of the accruing of the cause of action, and returning afterwards to England."   As we have seen, this same exception in favor of absent creditors was, until 1818, a part of our statute, and it was then repealed, because it was not considered fair, as suggested also in the old English cases we have cited, that citizens of other States and subjects of foreign countries should have greater advantages than our own citizens.   And that this was the object intended by the repeal of the proviso in favor of absent creditors, is evident from what was said by ARCHER, J., in delivering the opinion of the Court of Appeals in the case of *Frey* v. *Kirk*, 4 G. & J. 521. "The unlimited latitude," he said, "given to persons beyond seas was considered by the Legislature as unreasonable, and it could constitute no actual grievance or just cause of complaint if they were reduced to the same standard *as our own citizens*."   And again he says in the same case, that the construction the Court had placed on this

same Act, was such as put all suitors, foreign and domestic, upon the same footing.   See also *Pancoast, Lessee*, v. *Addison*, 1 H. & J. 350.   It is apparent, therefore, that the saving or exception in favor of creditors has always in England, and in Maryland also, as long as it was a part of our law, been held to apply  to both foreign and domestic creditors.

And if that be so, why should not the like provision in section 5 of Art. 57 have the same liberal construction? In England, under the Statute of 4 and 5 Anne, ch. 16, sec. 19, a foreign defendant could not plead the Statute of Limitations unless he had returned and been in England during the statutory period of limitation.   *Forbes* v. *Smith*, 11 Exch. 161; *Fannin* v. *Anderson*, 7 Queen Bench, 811.   And it has been uniformly held that the words "beyond the seas" is equivalent to "out of the State," "out of the jurisdiction,"   It was so held by this Court in *Maurice & Worden*, 52 Md. 291, and, therefore, if section 5 should be read as construed in that case, it would read as follows : " If any person, &c., shall be out of the State, beyond seas or out of the jurisdiction of the State " at the time the action accrues, &c., he shall have no benefit, &c.   So read, section 5 would be identical with section 19 of Statute 4 and 5 Anne, ch. 16, which has always been held in England to include both residents and non-residents.   *Fannin* v. *Anderson*, 7 Queen Bench, 811 ; *Towns* v. *Mead*, 16 C. B. 123 ; *Forbes* v. *Smith*, *supra*.   Then, according to the terms of this section thus read, a citizen of Pennsylvania may be sued in our Courts, and it is conceded that, as against one of our citizens, a citizen of Pennsylvania cannot successfully plead the statute when sued here, if the former shall commence his action after the presence here of the latter within the statutory period, for it was so held in *Hysinger* v. *Baltzell*, 3 G. & J. 158.   In *White* v. *White*, 1 Md. Ch. Dec. 57, it was held that the circumstance of the defendant in that case, being a non-resident, did not deprive him of the benefit of the Statute of Limitations of Maryland, because it was clearly shown that

he had been in Baltimore more than three years before the action was commenced. And, of course, if he had not been here during the statutory period, he could not have relied upon limitations as a defence.

It would also seem to be clear that the plaintiffs, who are citizens of another State, have the same right to sue here that a citizen of this State has, and it is difficult to understand upon what principle of justice or fairness the non-resident debtor should be allowed to plead limitations against a non-resident creditor, and not against one of our own citizens. All should be on the same footing. *Frey* v. *Kirk, supra.* And this would accord not only with justice, but would seem to be giving to non-residents nothing more than they have a right to demand. For it would not do to say that our citizens and citizens of other States would enjoy the same rights and privileges here, when, under our law, the latter would be absolutely barred from recovery by a plea of limitations, while it would not avail against the former. *Paine* v. *Drew,* 44 N. H. 314. And inasmuch as the right to set up limitations as a defence has no existence except by virtue of statute, we should not allow it to prevail any more in the one case than in the other, unless it can be clearly shown that there is some statutory provision requiring such a distinction to be made.

It was urged that the course of the plaintiffs is somewhat inconsistent, in that they seek to avoid the effect of defendant's plea, because of the non-residence of the latter while the very action by which the defendant was forced into a Maryland Court is founded upon the same fact. While it is true the attachment proceedings were based on the non-residence of defendant, yet this is another case, in which, as the plaintiffs contend, the question of residence or non-residence is not involved, but only the question of the absence or presence in this State of the defendant, without regard to residence. Nor is it correct to say that the defendant was compelled to appear to this action. On the contrary, its appearance was entirely voluntary. *Fairfax Forrest Co.* v.

*Chambers*, 75 Md. 604, &c. Such appearance was not even necessary to enable it to plead limitations or make any other defences, for the same defences which could have been made in this case would have been as well made on its behalf by the garnishee in the attachment case without any appearance on the part of the defendant in this case. *Poe Prac.*, sections 540 and 543. But there does seem to be some inconsistency in the position assumed by the defendant. Because it is a non-resident, it claims the benefit of that part of the Statute of Limitations which is in its favor and denies for the same reason that section 5, which is not in its favor, has any application whatever to it. It would seem but fair that our statute should apply altogether or not all to the defendant. If altogether, the rejoinder of the defendant was bad and the replication of the plaintiff was good, and if not at all, the defendant's plea was bad, and in either case the judgment on the demurrer should have been against the defendant.

We may now briefly consider another question raised by the demurrer, namely, the cause of action having accrued and the contract having been made outside the State, does such contract constitute such a cause of action as·is contemplated by section 5 of Art. 57. It was contended by the defendant that foreign contracts are not contemplated by this section, but that it relates only to contracts made in this State and to be performed here. But we think such a construction would be strained, and it was said by JERVIS, C. J., in *Lafonde* v. *Ruddock, supra*, "the rejoinder now proposed is that the plaintiff is a Frenchman domiciled in France, and that the cause of action accrued there, so as to negative inferentially that the plaintiff returned to this country within the meaning of the proviso." " It seems to me," he continued, " that is seeking to put too strict a construction upon this Statute," and it was held that " *the mere circumstance of the cause of action accruing in France, and the plaintiff being a domiciled Frenchman,*" was no answer to the replication that at the time the cause of action accrued

the plaintiff was beyond seas, and had commenced his action within the period limited, next after his return, &c. Nor is there anything in the language of the section under consideration which would seem to compel us to adopt the narrow construction suggested by the defendant. In *Fairfax Forrest Man. Co.* v. *Chambers, supra,* it was held that "our Courts have jurisdiction in regard to contracts whether made in or out of this State, and where the suit is brought by a non-resident against a non-resident defendant upon a foreign contract, if the defendant voluntarily appears, and the case is tried upon its merits, the validity of a judgment rendered in such a case cannot be questioned." There, as here, the defendant was a non-resident corporation and the proceedings were begun by suing out a foreign attachment. If, then, our Courts have jurisdiction in respect to, and the section in question is general enough to include foreign contracts, we can see no reason why they should not be held to be embraced within its terms. To exclude them would be to deprive citizens of other States of rights and privileges to which they are entitled. *LeRoy* v. *Crowningshield,* 2 Mason, 157 ; *Paine* v. *Drew, supra.* But it was urged that to adopt the liberal construction and thus assume jurisdiction over foreign litigants would make the Courts of this State the battle-ground on which would be waged a never-ending war. The danger, if any, is more imaginary than real.

In *Paine* v. *Drew, supra,* SARGENT, J., who delivered the opinion of the Court in that case, said : "The objection that our Courts will be crowded with stale claims from abroad, to the exclusion of their legitimate business, is purely imaginary. The fact that this question is now for the first time directly raised, is a sufficient answer to the objection.'"

No authority has been produced to sustain the defendant's position. On the contrary, a number of Courts of the highest authority have held, in construing statutes more or less like ours, that the more liberal construction is the more reasonable and just one. We will examine a few of them,

though the language of the statutes construed differs more or less from each other and also from our own statute, so that decisions based upon them cannot always be accepted as of controlling authority. The case, however, just cited, *Paine* v. *Drew, supra*, is so similar in all its facts to the one at bar, and the opinion of the Court is so full and clear, that it deserves more than ordinary consideration. The statute of New Hampshire (Public Stats., 1891, ch. 217), provides that "If the defendant at the time the cause of action accrued or afterwards was absent from or residing out of the State, the time of such absence shall be excluded," &c. It was held (*Paine* v. *Drew*), that a citizen of Maine suing a citizen of Massachusetts, in the Courts of New Hampshire, the latter could not avail himself of the Statute of Limitations in any other manner than as though the plaintiff were a citizen of New Hampshire; in other words, that the statute would not protect him until he had been in New Hampshire long enough to allow the plaintiff to sue within the time limited. In commenting upon provisions of statutes of the various States like our section 5 of Art. 57, it was said, "it has been held almost uniformly, that these words, *absence, return, leaving property*, &c., are not confined in their application to those who have once been inhabitants, but are equally applicable to those who have never before been in the State; to foreigners as well as citizens," and that whether the statute runs against a claim or not, depends entirely on the presence or absence of the *defendant*, and that it matters not whether the plaintiff be resident or non-resident, absent or present in the State. In the case of *Ruggles* v. *Keeler*, 3 Johns. 263, CHANCELLOR KENT took the same view, and that, too, upon the construction of a statute substantially like ours. He said, "whether the defendant be a resident of this State and only absent for a time, or whether he resides altogether out of the State, is immaterial. He is equally within the proviso." The proviso referred to is that "if the defendant shall be out of the State" he shall have no benefit of the statute, &c. And in the case just cited both parties were non-residents.

In *Graves et al. v. Weeks*, 19 Vermont, 181, it was held that the statute of that State extended to the case where both parties were residents of another State, and the debtor is within the State of Vermont for temporary purposes. The statute was that limitations should not run " when the debtor at the time the action accrued was out of the State." To the same effect are *Hartley* v. *Crawford*, 12 Neb. 471 ; *Kemp* v. *Bader*, 86 Tenn. 189; *Power* v. *Hathway*, 43 Barb. 214 ; *Olcott* v. *Tiogo R. R. Co.*, 20 N. Y. 210; *Larson* v. *Aultman*, 86 Wisconsin, 281 ; *Bulger* v. *Roche*, 11 Pick. 36 ; *Goetz* v. *Voelinger*, 99 Mass. 504; *McCann* v. *Randall*, 147 Mass. 81. In *Angell on Limitations*, sec. 205, the author says : "The Acts of Limitations of Maryland of 1715 and 1765 are by judicial construction to be taken together and to receive an interpretation to carry into effect the plain and obvious intent of the Legislature, which was that limitations should not attach against a creditor where the debtor was absent from the State."   And he cites *Hysinger* v. *Baltzell*, *supra*, where the defendant was a resident of Pennsylvania when the cause of action accrued, and it was held he could not plead the statute, because he had not been here long enough to afford the plaintiff an opportunity to prosecute his writ.   It is true that in *Hysinger & Baltzell* the plaintiff was a resident of this State, but as we have seen, both residents and non-residents stand upon the same footing in this respect, *Frey* v. *Kirk*, *supra ;* and the absence or presence in the State of the plaintiff has no effect whatever upon the running or not running of the statute. *Paine* v. *Drew*, *supra; White* v. *White*, *supra.*   In conclusion, we will refer to the case of *Maurice* v. *Worden*, *supra*, which we think gives a clear and satisfactory construction of section 5, entirely confirming the views here expressed. The whole question raised by the defendant here is whether that section applies to it.   The contention is that the section referred to will be so construed as to restrict it to resident debtors, and reliance was placed here, as there, upon section 4 of the same article of the Code and its relation to section 5, the

argument being that inasmuch as the former related only to residents, the latter, which was claimed to be a supplement to it, had no other or greater significance. This Court, however, seems to have placed very little reliance upon section 4 for any purpose, and declared it to be so ambiguous that it is practically useless—so useless that it was said the profession did not seem ever to have relied on it. But in regard to section 5, it was said that the meaning of the phrase therein used, namely, "out of the State," is identical with the well known expression "beyond the seas," or, "out of the actual jurisdiction," "beyond the reach of process of the State." We have already seen that the words "beyond the seas," whether used in Statutes of Limitations in regard to creditors or debtors, have always been held to apply to both residents and non-residents, unless otherwise provided, as for instance in the Illinois Statute. "Without undertaking," said this Court in the case just cited, "to review all the cases in which have been construed, the words 'beyond the seas,' and 'out of the State,' there is in reality no conflict among them, and they all tend to ascertain whether or not in the particular case the party could be reached by the process of the Court. If he can be reached by process; it matters not whether he be resident or not, for in either case he will be protected by the statute, unless his creditor sues him within the time limited—and this without regard to whether the creditor be present or absent from this State. And, on the other hand, if the debtor cannot be reached by process, he is "beyond the seas," "absent out of the State." And therefore, although a defendant may be actually within the territorial limits of the State, if he is beyond the reach of process, he is, within the meaning of the statute, "out of the State." *Maurice* v. *Worden, supra;* *Sleght* v. *Kane*, 1 Johns. Cases, 76.

　　　　　　　　　　　*Judgment reversed and cause re-*
(Decided June 19th, 1895.)　.　*manded for new trial.*

ROBINSON, C. J., BRYAN and BRISCOE, JJ., dissent.