**Douglas M. BATCHELOR and Mary M. Batchelor et al.,**

v.

**LEGG & CO.**

**Dr. Harry B. AUERBACH et al.,**

v.

**LEGG & CO.**

**Civ. Nos. 19709, 20512.**

United States District Court, D. Maryland.

Feb. 17, 1971.

J. Cookman Boyd, Jr., Walter S. Levin and Sauerwein, Boyd & Decker, Baltimore, Md., for plaintiffs.

John Henry Lewin, Harry Teter, Jr. and Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

HARVEY, District Judge:

In these consolidated civil actions, the plaintiffs, who are all former customers of the stock brokerage firm of the defendant Legg & Co., are suing such firm for claimed violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

The plaintiffs seek money damages in varying amounts for losses allegedly incurred by them as the result of their

purchase through Legg of shares of the common stock of Hamilton Life Insurance Company at various times during the period from 1963 to July 1967. The plaintiffs claim that the Act and Rule 10b–5 were violated by representatives of Legg in making untrue statements of material fact and in omitting to state material facts necessary to make statements made not misleading.

After extensive discovery, the defendant has now filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The defendant claims that the pleadings, depositions, affidavits and answers to interrogatories establish that there is no genuine issue as to any material fact and that it is therefore entitled to judgment at this stage of the proceedings. Extensive briefs have been filed by the parties and full argument heard.

To put the issues in this case in proper perspective, this Court will, at the outset, state its understanding of the principles which apply in this Circuit insofar as the granting or denial of summary judgment is concerned. In Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Company, 381 F.2d 245, page 249 (4th Cir. 1967), the Court, in reversing Judge Northrop's grant of summary judgment, summarized the law in this Circuit as follows:

> "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. Neither should summary judgment be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions. 3 Barron & Holtzoff, *Federal Practice & Procedure* § 1234 (Rules ed. 1958). Burden is upon party moving for summary judgment to demonstrate clearly that there is no genuine issue of fact,

and any doubt as to the existence of such an issue is resolved against him. 3 Barron & Holtzoff, *Federal Practice & Procedure* § 1235 (Rules ed. 1958).

> "In Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955), this court repeated its holding in Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), that summary judgment under Rule 56 should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. This is true even where there is no dispute as to the evidentiary facts but only as to the conclusions or inferences to be drawn therefrom, and the 'party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence.' Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967).

> "As we stated in American Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965):

>> 'Not merely must the historic facts be free of controversy but also there must be no controversy as to the inferences to be drawn from them. It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment.' "

This is not to say, however, that summary judgment may not be appropriate in complex cases as well as in simple ones. In Johns Hopkins University v. Hutton, 297 F.Supp. 1165 (D.Md.1968), which was affirmed in part, 422 F.2d 1124 (4th Cir. 1970), Judge Kaufman of this Court granted summary judgment in a substantial case brought under other provisions of the Act. What the trial court must do in each case is to determine from the record as a whole, at the

time that the summary judgment motion is heard, whether an issue of fact is involved.

Before considering the facts themselves in the light of the allegations of the complaint, this Court would note that questions arise initially as to the law to be applied here, namely, the proper interpretation which this Court should give to pertinent provisions of Section 10(b) and Rule 10b–5. In particular, the interpretation to be given to subparagraph 2 of Rule 10b–5 is in question in this case, such subparagraph providing as follows

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, * * *

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

Clearly, there are a number of different elements which a plaintiff invoking this provision must prove if he is to be entitled to money damages, including falsity and materiality. Defendant suggests that in addition, scienter or something approximating scienter is required. Plaintiffs, on the other hand, argue that scienter is not necessary but that there is absolute liability or that at a minimum they need prove only that material misstatements were negligently made. This question must be resolved before the facts here are considered.

The most recent case in this Circuit dealing with this question is Baumel v. Rosen, 283 F.Supp. 128 (D.Md.1968), modified by 412 F.2d 571 (4th Cir. 1968), an opinion of Judge Winter sitting as a District Judge. In that case, which was a private action brought under Section 10(b) and Rule 10b–5 for rescission and/or damages, Judge Winter said this (at page 140):

"The Transamerica [Speed v. Transamerica Corp., D.C., 99 F.Supp. 808] case and the majority view, as expressed by the decisions to which reference has been made, seem clearly to indicate that something less than common law fraud is necessary to establish a cause of action under Rule 10b–5. Particularly is this so when the majority view is compared with the elements of fraud under Maryland law, as set forth in Suburban Properties Mgmt., Inc. v. Johnson, 236 Md. 455, 204 A.2d 326 (1964). In the view of the Court, Rule 10b–5 should be so construed to give effect to its remedial purpose and the remedial purpose of the Act under which it was adopted. S.E.C. v. Capital Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). It follows that proof of common law fraud is not required to sustain a cause of action under Rule 10b–5."

There is no decision in the Fourth Circuit discussing this point, although the Court did not disagree with Judge Winter in this regard when Baumel was appealed. However, in an examination of the various cases from other Circuits, in particular, the Ninth, the Eighth, the Tenth and the Second, it appears that there is a definite trend against requiring proof of scienter in private actions such as the present one. I would cite from the Ninth Circuit Ellis v. Carter, 291 F.2d 270, 274 (9th Cir. 1961); in the Eighth Circuit Myzel v. Fields, 386 F.2d 718, 735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 in 1968; in the Tenth Circuit, Securities & Exchange Commission v. Pearson, 426 F.2d 1339, 1343 (10th Cir. May, 1970); also Stevens v. Vowell, 343 F.2d 374, 379 (10th Cir. 1965).

Most significant, in the opinion of this Court, is that the Second Circuit Court of Appeals has now abandoned a former strict adherence to a showing of scienter under Section 10(b) and Rule 10b–5. In Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833, at

page 854 to 855 (2nd Cir. 1968), cert. denied, Kline v. Securities and Exchange Commission, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), the Court said this:

"However, whether the case before us is treated solely as an SEC enforcement proceeding or as a private action, proof of a specific intent to defraud is unnecessary. In an enforcement proceeding for equitable or prophylactic relief, the common law standard of deceptive conduct has been modified in the interests of broader protection for the investing public so that negligent insider conduct has become unlawful. See Berko v. SEC, 316 F.2d 137, 141–142 (2 Cir. 1963); SEC v. Capital' Gains, etc., Bureau, 375 U.S. 180, 193, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). A similar standard has been adopted in private actions, see, e. g., Stevens v. Vowell, 343 F.2d 374 (10 Cir. 1965); Ellis v. Carter, 291 F.2d 270 (9 Cir. 1961); Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9 Cir. 1962); Dack v. Shanman, 227 F.Supp. 26 (SD NY1964); but see, e. g., Weber v. C. M. P. Corp., 242 F.Supp. 321 (SDNY 1965); Thiele v. Shields, 131 F.Supp. 416 (SDNY1955), for policy reasons which seem perfectly consistent with the broad Congressional design '* * to insure the maintenance of fair and honest markets in * * * [securities] transactions.' Sec. 2 of SEC Act, 15 U.S.C. § 78b, see Kohler v. Kohler Co., 319 F.2d 634, 642 (7 Cir. 1963); Note, 32 U.Chi.L.Rev. 824, 839–44 (1965); Note, 63 Mich.L.Rev. 1070, 1079–81 (1965).

"Absent any clear indication of a legislative intention to require a showing of specific fraudulent intent, see Note, 63 Mich.L.Rev. 1070, 1075, 1076 n. 29 (1965), the securities laws should be interpreted as an expansion of the common law both to effectuate the broad remedial design of Congress, see SEC v. Capital Gains Research Bureau, *supra*, 375 U.S. at 195, 84 S.Ct.

275, and to insure uniformity of enforcement, see Note, 32 U.Chi.L.Rev. 824, 832 n. 36 (1965), citing McClure v. Borne Chemical Co., 292 F.2d 824, 834 (3 Cir. 1961). Moreover a review of other sections of the Act from which Rule 10b–5 seems to have been drawn suggests that the implementation of a standard of conduct that encompasses negligence as well as active fraud comports with the administrative and the legislative purposes underlying the Rule. Finally, we note that this position is not, as asserted by defendants, irreconcilable with previous language in this circuit because '*some form* of the traditional scienter requirement,' Barnes v. Osofsky, 373 F.2d 269, 272 (2 Cir. 1967), (emphasis supplied), sometimes defined as 'fraud,' Fischman v. Raytheon Mfg. Co., 9 F.R.D. 707 (SDNY1949), rev'd on other grounds, 188 F.2d 783, 786 (2 Cir. 1951) is preserved. This requirement, whether it be termed lack of diligence, constructive fraud, or unreasonable or negligent conduct, remains implicit in this standard, a standard that promotes the deterrence objective of the Rule."

After reviewing all the authorities that have been cited to the Court, this Court concludes that scienter is *not* essential to establishing a violation of Section 10(b) and Rule 10b–5 in this case, but that plaintiffs, in addition to proving other requisite elements, need show merely a lack of due diligence or unreasonable or negligent conduct on the part of the defendant. This Court does not agree with plaintiffs that the test is one of absolute liability.

It therefore appears that the principal issue before the Court on this motion is whether there is any issue of fact here concerning negligent misrepresentations or omissions on the part of representatives of Legg in connection with the sale of this stock to the plaintiffs. The defendant has engaged in extensive discovery and has filed the deposition of one

of the plaintiffs and numerous affidavits in support of its position. The plaintiffs' response has been substantially less. Only three depositions of representatives of Legg have been taken by the plaintiffs who further rely on brief affidavits executed by the plaintiffs themselves. At most, plaintiffs' factual showing at this stage of the case is no more than the bare minimum necessary for a party opposing a motion for summary judgment. The question before the Court is whether the minimal facts established by plaintiffs in support of their claims and any reasonable inferences therefrom, are sufficient to require the defendant to go to trial.

The allegations of the complaint which must be tested in the light of the record here are contained in paragraphs 5 and 6 of the complaint. Boiled down, these allegations are essentially four in number, as follows:

Allegation No. 1. "That defendant intentionally misrepresented that Hamilton Life Insurance Co. was being operated on a sound basis, by dynamic and reliable persons; and that high quality insurance was being written;"

Allegation No. 2. "That defendant misrepresented that a special situation existed in that there existed only a limited number of Hamilton shares for purchase;"

Allegation No. 3. "That defendant omitted to state that it was operating as a principal instead of as an agent in dealing in Hamilton stock, an alleged material omission;"

Allegation No. 4. "That defendant engaged in improperly making a market and establishing artificial prices, also an alleged material omission."

It is clear to the Court, after reviewing the record here, that there is no factual support for Allegation No. 2, pertaining to the alleged misrepresentation by Legg that there were a limited number of shares of Hamilton Life Insurance stock available for purchase.

Plaintiffs in effect have produced nothing to rebut defendant's factual showing that such representations were true, if made at all to the plaintiffs.

Resolution of the questions that arise with regard to the other three allegations are not quite so clear. After a careful analysis of the papers and the arguments on both sides, this Court concludes that conflicting inferences may be drawn from the evidence here, that reasonable men might therefore differ as to such inferences and that the defendant accordingly has not clearly demonstrated that there is no genuine issue of fact in this case. Admittedly, the plaintiffs have not produced much, but in the opinion of this Court, there is, as to several points which will be discussed hereafter, sufficient doubt that an issue of fact is involved, that this Court will resolve such doubt against the defendant, as it is required to do under the *Phoenix Savings & Loan* case rule.

With reference to the allegation that defendant misrepresented to plaintiffs that Hamilton Life Insurance Company was being operated on a sound basis by reliable and dynamic persons, defendant has filed numerous affidavits of representatives of Legg concerning the efforts taken by Legg to investigate this company and its chief executive officer, admittedly the dominant figure in the company, Mr. Phillip J. Goldberg. But in spite of the weight of this evidence, such does not conclusively resolve the question of due diligence in defendant's favor. The minutes of a meeting held at Legg in June of 1963 indicate that Goldberg then had a relationship with certain Legg partners "almost on a day-to-day basis," and kept them "informed of our progress and Hamilton in particular."

If this were so, the question that arises is why Legg representatives did not know of the serious problems which later arose and which led to Goldberg's resignation. Was this because Goldberg concealed these facts from Legg's representatives in such a way that they could not

have been ascertained by the exercise of due diligence, or was it because Legg's people did not investigate as they should have? Were there positive indications that Goldberg was not a reliable chief executive officer with a sound background? These and other questions cannot be definitively resolved on this motion for summary judgment in which reasonable inferences must be construed in favor of the plaintiffs. The Hamilton Life situation has been described by a Legg partner as coming down to "that you either buy Goldberg or you don't." On one occasion, Murphy of Legg was told by a partner of another reputable brokerage firm that "he didn't think Goldberg was what Goldberg said he is." Was this just a casual remark that Murphy was justified in ignoring or was this statement significant enough for Murphy to report it to others at Legg? Whether this decision was a reasonable and prudent one under all the circumstances cannot be determined on the record here, even though other portions of Murphy's deposition certainly weigh in defendant's favor. Determination of the weight to be accorded different parts of the evidence must be left to the trier of the facts.

Coming next to the allegation that defendant omitted to state that it was operating as a principal instead of as an agent in dealing in Hamilton stock, defendant claims that confirmation slips given to plaintiffs disclosed the capacity in which defendant was acting. This may well be so as to many of the plaintiffs. But the pleadings, affidavits and depositions do not show this to be true as to all the transactions of all the plaintiffs. Indeed, confirmation slips are sent out after the sale. They do not necessarily prove that before the order was entered the purchaser knew that Legg was acting either as a principal or as an agent. Perhaps they might go to prove knowledge as to subsequent sales to a plaintiff, assuming that subsequent sales were made by Legg in the same

capacity as the original sale, but they do not necessarily prove that this fact was conclusively supplied before the original sale.

With reference to the allegation that defendant engaged in improperly making a market, defendant contends that plaintiffs have misconstrued such allegation and that it must be understood as a claim that defendant was making a market improperly. But this is plaintiffs' allegation. In a motion for summary judgment, all reasonable inferences are to be drawn in favor of the party opposing the motion, and it is not for defendant to tell plaintiffs what they meant when they drew the complaint.

In support of its position as to this allegation, plaintiff relies on the recent case of Chasins v. Smith, Barney & Co., CCH Federal Securities Reporter, Paragraph 92,712, a decision that a panel of the Second Circuit rendered on July 7, 1970. After reviewing the briefs and other papers that have been submitted with reference to the *Chasins* decision, I have concluded not to make any ruling at this time concerning the applicability to this case of *Chasins*. A petition for rehearing before the Second Circuit *en banc* is still pending. General Counsel of the S.E.C. itself has suggested that if the opinion is to be construed broadly, the petition for rehearing should be granted so that the Second Circuit may consider the potential impact of the decision on the securities industry and whether the rule of the case should be applied prospectively or retroactively.

Furthermore, the facts in the pending case are somewhat different from those in *Chasins*. Defendant quite properly points out that the affidavits of four of the plaintiffs are in direct conflict with their sworn answers to interrogatories in which they admitted that they knew that defendant was making a market in the stock of Hamilton Life at the time of the purchase. Such earlier answers certainly make the later affidavits suspect. However, resolution of questions

of credibility, even where as much doubt has been raised as has here, must be left to the eventual trial. Other plaintiffs have flatly sworn in their affidavits that they did not know at the time that the stock was purchased that the defendant had been making a market.

For the reasons previously stated, this Court cannot say on the present record that the confirmation slips here disclosed to all the plaintiffs (and as to all transactions) that Legg was making a market in this stock. Before the Court can rule that *Chasins* either does or does not apply in this case, further development then as to both the law and the facts is necessary. But, as the Court has found as to some of the allegations here that issues of fact are present requiring a trial, it is not necessary to rule at this time whether plaintiffs can go forward on their allegation that defendant engaged in improperly making a market. A final ruling on that question as to all plaintiffs will be reserved until later, although it is certainly clear that as to a number of the plaintiffs, the *Chasins* case could not possibly apply because Legg was acting as a broker in making sales to them.

Finally, defendant argues here that Section 15(c) (1) of the Act, by dealing specifically with brokers and dealers, may preclude any charges brought under Section 10(b) against firms acting as such. A review of the authorities would indicate that today the remedies under different sections of the Act are seen as being cumulative. I would cite in this regard Jordan Building Corp. v. Doyle, O'Conner & Co., Inc., 401 F.2d 47 at page 51 (7th Cir. 1968), where the Court said this:

> "In order that our action may be in accord with the congressional intent found in both the 1933 and 1934 acts, and so that we may give proper recognition to the fact that the remedies supplied by and under these acts are cumulative and not mutually exclusive, for the reasons hereinabove set forth,

we now reverse the interlocutory order of the district court from which this appeal was taken."

For the reasons stated, the motion for summary judgment is denied.

■ I would note, however, that as alternative relief the defendant has asked for partial summary judgment as to certain plaintiffs and also for relief under Rule 56(d). That Rule provides as follows:

> "If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

The Court will reserve ruling on these questions. If defendant wishes to press these points, more specific pleadings should be filed. Allegations should be made as to which plaintiffs or which particular transactions or which portions of the plaintiffs' claims should be dismissed. The defendant, of course, may wish to take further depositions of the plaintiffs in this connection. In any event, the defendant should specifically request findings to be made under Rule 56(d) that are without substantial controversy and the defendant also, if it wishes to press for this relief, should specify which claims and which transactions should be dismissed.