**Arnold M. JOLIVET, Plaintiff,**

v.

**Wilson H. ELKINS, President of the University of Maryland, et al.,
Defendants.**

**Civ. No. H–74–595.**

United States District Court,
D. Maryland.

Dec. 17, 1974.

John H. Rhines and James E. Stancil, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen. of Maryland, Estelle A. Fishbein and David H. Feldman, Asst. Attys. Gen., Baltimore, Md., for defendants.

ALEXANDER HARVEY, II, District Judge:

Formerly a student at the University of Maryland School of Law (hereinafter "the Law School"), plaintiff, a black resident of Baltimore City, has brought this civil action seeking declaratory and injunctive relief as well as money damages because of alleged violations of his constitutional rights. Jurisdiction is asserted under 42 U.S.C. §§ 1981, 1983 and 1988, and 28 U.S.C. §§ 1331 and 1334. Named as defendants are the President of the University of Maryland; the Chairman and the members of the Board of Regents of the University; the Chancellor of the University at Baltimore; the Dean of the Law School; the members of the Law School Faculty Administrative Committee; and five individual law professors.

Plaintiff was a student at the Law School for three full years but did not graduate. The essence of his claim in this suit is that defendants have excluded him from the Law School and have refused to readmit him because of his race. In his complaint, plaintiff alleges that he needs only five academic credits in order to graduate; that defendants have previously given him low grades and failing grades in his courses because of his race, thus resulting in his exclusion from the Law School; that defendants have denied him financial aid because of his race; and that

defendants have denied him a fair hearing in connection with his efforts to be readmitted. Plaintiff claims that by these acts defendants have deprived him of rights guaranteed by the Thirteenth Amendment and by the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.

As relief, plaintiff seeks an injunction requiring his immediate readmission to the Law School [1] and restraining defendants from engaging in discriminatory grading and financial aid practices and from intimidating plaintiff in the classroom. Plaintiff further asks this Court to order the desegregation of the faculty and staff at the Law School and the appointment of more minority faculty and staff and, in addition, seeks $1,000,000 damages together with attorneys' fees.

Defendants have now filed a motion for summary judgment, together with supporting affidavits and exhibits.[2] Defendants assert that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure because plaintiff's claims for relief are barred (1) by limitations and (2) by laches. An opposition to the pending motion has been filed by plaintiff, together with a supporting affidavit and exhibits. Although conceding that a three-year statute of limitations is applicable in this case, plaintiff asserts that his cause of action did not accrue more than three years before he filed suit and that in any event, the running of any period of limitations or laches has been tolled by various efforts he undertook for an administrative review of his right to be readmitted to the Law School.

Besides the basic pleadings themselves, the record presently before the Court includes (1) various motions with supporting affidavits previously filed by the parties;[3] (2) the depositions of plaintiff and of defendant William P. Cunningham, Dean of the Law School; (3) plaintiff's interrogatories to various defendants; and (4) answers to plaintiff's interrogatories. Following a hearing in open court on the pending motion for summary judgment, further briefs have been filed by the parties.

### Summary Judgment

Summary judgment should be granted only where there is no genuine issue as to any material fact. Rule 56 (c), Federal Rules of Civil Procedure. If conflicting inferences may be drawn from the evidence, or if reasonable men might reach different conclusions therefrom, summary judgment is not appropriate. Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Company, 381 F.2d 245, 249 (4th Cir. 1967); Batchelor v. Legg & Co., 52 F.R.D. 545 (D.Md.1971).

The issues raised by the pending motion are (1) whether plaintiff's cause of action accrued more than three years before June 11, 1974 when this suit was filed and (2) whether the running of limitations was tolled by plaintiff's efforts to secure an administrative review of his right to continue as a stu-

1. Following a hearing, this Court denied plaintiff's motion for a temporary restraining order which would have required defendants to readmit him to the Law School for the 1974 Fall Term.

2. An answer to the complaint has also been filed on behalf of the defendants by the Attorney General of Maryland. The answer denies the essential allegations of the complaint and raises various affirmative defenses. Defendants assert that plaintiff did not graduate from the Law School and was dropped following his final year, not because of racial considerations but because plaintiff had not met the School's academic requirements.

3. Several preliminary motions have been filed and ruled on by the Court after hearings, including plaintiff's motion for a temporary restraining order and defendant Cunningham's motion for a protective order with reference to the taking of his deposition.

dent at the Law School. The basic facts material to these issues are not disputed. However, for a proper understanding of the application of these facts to the controlling legal principles, it is necessary that the history of and the other background facts pertaining to the dispute between plaintiff and the Law School be set forth in some detail.

### Facts

Arnold M. Jolivet, the plaintiff, who is now thirty-two years of age, was graduated from Morgan State College in Baltimore, Maryland, in June 1966. In the Fall of 1965, during his senior year at college, he had applied to the University of Maryland for admission to the Law School. His application was rejected in the Spring of 1966.

In the Fall of 1966, Jolivet again applied for admission to the Law School, and his application was again rejected the following Spring of 1967.[4]

According to the testimony of Dean Cunningham at his deposition, plaintiff had been initially denied admission in 1967 because he had not met the Law School's general competitive standards in both Law School Admission Test scores (hereinafter LSAT) and in college scholastic averages. Plaintiff had taken the LSAT examination three times, achieving a score of less than 300 on one examination and later scores slightly above 300 on two other exam-

inations.[5] Plaintiff's college scholastic average at Morgan State was 2.8. Students who had been admitted to the Law School for the academic terms beginning in 1966 and 1967 had been required to have LSAT scores of at least 550 and college scholastic averages of 3.0 or more.

Following his initial rejection in the Spring of 1967, plaintiff visited the Law School and discussed the matter with Associate Dean William Hall. Dean Hall told plaintiff that he had been denied admission because the Faculty Admissions Committee had concluded that he would not do well in law school. Dean Hall stated that the Committee based its decision on its evaluation of plaintiff's LSAT scores and his college scholastic record. Plaintiff thereupon advised Dean Hall of his determination to be admitted even if he had to bring legal action to accomplish such end. Plaintiff stated that he was contemplating a law suit to force his admission because he believed that he was qualified to be a student at the Law School and that the reason why only a few black students were at the Law School was a result of the unlawful discrimination which had been practiced by officials of the School over the years.

Following such conference, plaintiff was invited to file another application for admission to the Law School. After due consideration, such application was accepted, and plaintiff was enrolled for

---

4. The admission requirements for students entering the Law School for the Fall Term beginning in 1967 are found in 48 University of Maryland, Catalog of the School of Law, 1967–68 (1967). Included among such requirements are the following (at page 4):
   "REQUIREMENTS FOR ADMISSION
   "*General Rules and Procedures*
   "Applicants for admission are required to have a Bachelor's degree in arts or sciences, or equivalent degree, from an accredited college or university. * * *
   "All applicants are required to take the Law School Admission Test administered by the Educational Testing Service. This is a legal

aptitude test given at many points within and outside of the United States. * * *
"The chief criteria considered by the School in deciding upon admissions are the college scholastic average and the results of the Law School Admission Test, as experience indicates that these criteria are the best available predictors of success in law study. The right is reserved to refuse admission to applicants with sufficient scholastic credit whose presence in the School would be detrimental to the best interests of the School."

5. LSAT examinations are graded on a scale from 200 to 800.

the Fall Semester of 1967 as a full-time day student. Plaintiff was admitted at that time as one of four black students in an experimental admissions program for blacks and other disadvantaged students. According to Dean Cunningham, the purpose of that special program was to train for the legal profession more representatives of disadvantaged groups. The Dean testified that the program was undertaken even though the Law School recognized that most of the persons who would be candidates for admission did not have adequate educational backgrounds and, since they did not meet general competitive standards for admission, had only a fair chance of success in law school.[6]

The academic requirements for all students who entered the Law School for the 1967 Fall Semester included the following (Catalog, pages 12 and 13):

"ACADEMIC REGULATIONS

\*　\*　\*　\*　\*　\*

"*Grading System and Exclusion Rules*

"*Students enrolled AFTER September 1, 1964*: A (excellent), 85–100; B (good), 78–84; C (satisfactory), 67–77; D (passing), 60–66; F (failing), 50–59; and I (incomplete). \* \* \*

"Averages are computed by multiplying the numerical grade for each course by its weight in semester hours, adding the products for each course, and dividing the sum by the number of semester hours taken. The repeating of a course does not erase the previous grade; the new grade and old grade are both counted in determining cumulative averages. "First year students with weighted cumulative averages at the end of the scholastic year below 67.0 will be permanently excluded from the school, unless they have received no grades lower than 67 for work done in the second semester and have carried a normal course load during the second semester. All students other than first year students will be permanently excluded from the school unless, as of the end of each scholastic year, they maintain (1) weighted cumulative averages, including all work done since entering law school, of 67.0 or better, and (2) weighted averages for the most recent scholastic year of 67.0 or better. \* \* \*

"The Faculty Council reserves the right to require the withdrawal of any student whose continued presence would not, in the judgment of the Council, either because of low scholastic standing or other reasons, be of benefit to himself or would be detrimental to the best interests of the School. The Faculty Council also reserves the right to make such changes in the above regulations as may from time to time seem desirable.

"*Requirements for Graduation*

"*Students enrolled AFTER September 1, 1964*: To be eligible for the Bachelor of Laws degree a student must have fulfilled course requirements (see Curriculum), must be in good academic standing (i. e., not subject to exclusion)—(see Grading System and Exclusion Rules), and must have passed courses totaling at least 80 semester hours (repeating a course cannot result in receiving semester hour credit for the course more than once), and must have a weighted cumulative average of at least 67.0."

The academic courses which were taken and completed by plaintiff during his three years at the Law School, the

---

6. Two other black law students who were accepted at the same time as plaintiff under this special program (namely Michael Mitch-ell and Norris Ramsey) later graduated and, according to records of this Court, have been admitted to practice here.

names of the professors or instructors for each course, and the grades assigned to plaintiff for his work in each respective course are as follows:

| Course | Professor | Grade |
| --- | --- | --- |
| (Fall 1967) | *First Year* | |
| Contracts I | Prof. James W. McElhaney | 59 |
| Legal Method | Prof. Robert G. Fisher | 66 |
| Procedure I | Prof. Bernard Auerbach | 65 |
| Property I | Prof. Russell R. Reno | 60 |
| Torts I | Prof. John W. Ester | 66 |
| (Spring 1968) | | |
| Criminal Law | Prof. Edward A. Tomlinson | 65 |
| Procedure II | Prof. Bernard Auerbach | 73 |
| Property II | Prof. Russell R. Reno | 66 |
| Torts II | Prof. John W. Ester | 56 |
| (Fall 1968) | *Second Year* | |
| Commercial Transactions | Prof. Hal M. Smith | 60 |
| Constitutional Law | Prof. Aaron M. Schreiber | 67 |
| Domestic Relations | Prof. John W. Ester | 69 |
| Real Estate Transactions | Prof. Russell R. Reno | 60 |
| (Spring 1969) | | |
| Contracts II | Prof. Garrett Power | 69 |
| Estates and Trusts | Prof. Laurence M. Jones | 67 |
| Evidence | Prof. Robert G. Fisher | 71 |
| Income Taxation | Prof. William P. Cunningham | 66 |
| International Law | Prof. Bernard Auerbach | 70 |
| (Fall 1969) | *Third Year* | |
| Administrative Law | Prof. Edward A. Tomlinson | 69 |
| Comparative Law | Prof. Everett F. Goldberg | 63 |
| Conflicts of Law | Prof. James W. McElhaney | 68 |
| Federal Jurisdiction | Prof. Bernard Auerbach | 62 |
| The Legal Profession | Prof. William P. Cunningham | 57 |
| (Spring 1970) | | |
| Business Associations | Prof. Laurence M. Katz | 63 |
| Constitutional Law Seminar | Prof. David S. Bogen | 73 |
| Legal Aid | Mr. Michael A. Millemann | 80 |
| Practice Court | Mr. John O. Herrmann | 76 |
| Race and the Law | Prof. William L. Robinson | 79 |
| Torts II | Prof. James W. McElhaney | 62 |

———◆———

According to Law School transcripts, plaintiff's average for the 1967 Fall Semester was 63.2, his average for the 1968 Spring Semester was 65.8, and his cumulative average for his first year was 64.3. Plaintiff had completed a total of 27 credit hours in his first year of school, and his class standing at the end of the first year was 111 of 117. Because plaintiff's cumulative average for his first year was below the required minimum average of 67, he was notified in June of 1968 that he was not eligible to continue in the Law School. Subse-

quently, plaintiff applied for readmission, was readmitted on July 18, 1968, and resumed his law school studies in September 1968.[7]

Plaintiff continued to experience academic difficulties during his second year of Law School which ended in the Spring of 1969. His average for the 1968 Fall Semester was 63.5, his average for the 1969 Spring Semester was 68.5, and his cumulative average for the year was 66.1. Plaintiff's cumulative average for two years of work was 65.2. He earned a total of 27 credits for his second year, and his class standing was 88 of 89. As plaintiff's cumulative average of 65.2 for two years of work was below the school's required minimum cumulative average of 67, plaintiff was again advised that because of his academic standing he was not eligible to continue as a student at the Law School. Again he applied to the Faculty Council for readmission, was readmitted on August 19, 1969 and resumed his studies at the Law School in the Fall Semester beginning in September 1969.

During his third year at the Law School ending in the Spring of 1970, plaintiff once again encountered academic difficulties, although he was able to improve his performance slightly. His average for the Fall Semester was 64.6, his average for the Spring Semester was 70.8 and his cumulative average for the year was 67.9. Plaintiff stood 90 in a class of 90 students. As his cumulative average for three years of work was only 66.1, which was below the Law School's required minimum average of 67, plaintiff was not permitted to graduate with his class.

By letter dated July 23, 1970, Dean Cunningham advised plaintiff that because of his academic standing he was no longer eligible to continue as a student at the Law School. This letter was similar to the two previous letters in which plaintiff had been notified that he was being dropped from the school, and plaintiff was again further advised that if he wanted to file a petition for readmission, the Faculty Committee would review such petition and determine whether he should be readmitted.

Plaintiff did in fact again file a petition for readmission to the Law School, citing the following "special circumstances" to explain his academic performance during his third year:

Wife became sick, due to pregnancy. She was hospitalized for 2 weeks and then was confined to bed for another three months under doctor's orders. Also, I had to work about 40 hours per week because of my poor financial condition.

On September 14, 1970, Dean Cunningham advised plaintiff by letter that the Faculty Council had considered and denied his petition for readmission to the Law School. Plaintiff then requested the opportunity to appear personally before the Faculty Council in support of his petition for readmission. Such request was granted, and plaintiff personally appeared before the Council.

7. In a letter dated June 25, 1968, Dean Cunningham advised plaintiff that because of his academic standing he was not eligible to continue in the Law School. In the same letter, Dean Cunningham further advised plaintiff that: "[i]t is, of course, possible for the Faculty Council through its Administrative Committee to readmit a student whose average is below 67. In order to seek readmission under this provision, it is necessary for you to file a petition with the Dean's Office setting forth the reasons for your unsatisfactory grades and the reasons you feel that you could do satisfactory work in the future. Readmission is granted only when the Committee is convinced that the student's grades are due to special and unusual circumstances and that there is good reason to believe that he will be able to do satisfactory work in the future. I am enclosing a petition for your use should you wish to apply for readmission." Plaintiff did file such a petition for readmission, setting forth "special circumstances" to explain his poor academic performance. On July 18, 1968, Dean Cunningham sent a letter to plaintiff, advising him that the Faculty Council had reviewed and granted his petition for readmission. Dean Cunningham advised further that: "I assume you realize, however, that the Committee expects your academic performance to improve significantly."

Thereafter, he was advised by Dean Cunningham by letter dated November 25, 1970 that after careful consideration of his petition following his personal appearance before the Administrative Committee of the Faculty Council, "the Council adhered to its previous position, that your petition should not be approved."

By letter dated March 4, 1971, to Dean Cunningham, Leonard J. Kerpelman, a Baltimore attorney retained by plaintiff, requested a conference with the Dean at which plaintiff would be present. Mr. Kerpelman proposed to discuss plaintiff's marks in certain courses and "more particularly, the matter of the final examination in which Mr. Jolivet was only allowed to answer two of three questions." Dean Cunningham responded by letter dated March 15, 1971, indicating that both plaintiff and Mr. Kerpelman would be given an opportunity to appear before the Administrative Committee of the Faculty Council on March 23, 1971. Following such appearance by both plaintiff and his attorney before such Committee, Dean Cunningham advised plaintiff by letter dated March 24, 1971, that "the Administrative Committee is still of the opinion that your petition should not be approved."

Subsequently, on May 17, 1971, plaintiff wrote to Dr. Albin O. Kuhn, Chancellor of the University of Maryland at Baltimore, complaining that he was not eligible to continue in the Law School "because of certain discriminatory practices perpetrated against me." Plaintiff requested a hearing before Dr. Kuhn, stating that he had retained Mr. Leonard Kerpelman as his attorney and was "prepared to go to Federal Court to contest the legality of my exclusion."

On September 2, 1971, before receiving a response from Dr. Kuhn, plaintiff submitted another petition for readmission to the Faculty Council, setting forth additional special circumstances to explain his poor academic performance. By letter dated September 7, 1971, Dean Cunningham advised plaintiff that the Faculty Council had again denied his petition for readmission.

Following receipt of this letter from Dean Cunningham, plaintiff and J. H. Thomas, Jr., another local attorney retained by him, met with Dr. Kuhn and discussed plaintiff's attempts to gain readmission to the Law School and his charges of racial discrimination. In a letter dated September 24, 1971, Dr. Kuhn advised plaintiff that he would not be readmitted, rejecting his charges of racial discrimination and explaining that it would be extremely difficult for plaintiff to raise his grade level to that required for graduation.

On May 18, 1972, plaintiff again wrote Dean Cunningham requesting a personal appearance before the Administrative Committee of the Faculty Council. The Dean responded by a letter dated May 22, 1972, in which he requested that plaintiff send a statement in writing "as to any facts that have developed since our last hearing in your case that would warrant our rehearing your petition for readmission at this time." After receiving a letter from plaintiff dated June 6, 1972, Dean Cunningham responded on June 14, 1972, advising plaintiff that the Administrative Committee had denied his request because he had not presented any additional facts warranting further review of his petition for readmission.

Represented by a third attorney, John H. Rhines, plaintiff filed this civil action in this Court on June 12, 1974.[8]

8. At his deposition, plaintiff testified concerning other efforts whereby he sought readmission to the Law School. In 1972, he attempted to persuade three members of the Law School faculty to petition the entire faculty to consider his readmission. However, such effort failed because plaintiff was unsuccessful in securing three faculty members who would file such petition for him. Plaintiff also testified that he filed a petition for readmission in 1973 which was summarily rejected and that in April 1974, Dean Cunningham denied him another rehearing on his petition. In addition, it appears that in 1973 plaintiff sought admission to another law school, the University of Baltimore School of Law, but that his application was rejected.

*The Applicable Period
of Limitations*

The claims asserted by plaintiff in this case arise first because of his exclusion from the Law School in July 1970 and secondly because of the refusal of the Faculty Council to readmit him in November 1970. Plaintiff alleges that certain named law professors assigned him low grades and failing grades because of his race. He further alleges that certain named members of the Faculty Council denied him a fair and impartial hearing when he sought readmission and then refused to readmit him because of his race.

Thus, specific acts of racial discrimination and of a denial of due process are alleged. Those alleged acts of defendants which led to poor grades given to plaintiff all occurred between 1967 and 1970 while he was a student at the Law School. Those acts which resulted in the alleged denial to plaintiff of a fair hearing and in the alleged refusal of the Faculty Committee to readmit him because of his race occurred in 1970 after plaintiff had petitioned for readmission.

█ Plaintiff concedes that the Maryland three-year statute of limitations applies to the federal civil rights claims asserted here. McIver v. Russell, 264 F.Supp. 22 (D.Md.1967). Whether an equal protection or a due process claim is alleged in an action brought under 42 U.S.C. § 1983, the Maryland three-year statute of limitations is applicable. Hall v. Asher, 355 F.Supp. 808, 811 (D.Md.1973).

Designed to assure fairness to defendants, statutes of limitations promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared. Burnett v. New York Central Railroad Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed. 2d 941 (1965); Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct.

582, 88 L.Ed. 788 (1944). Suit was filed herein on June 12, 1974. By that date, more than three years had elapsed since plaintiff had received his final grades during the 1970 Spring Semester of the Law School. Furthermore, over three years had also elapsed since plaintiff personally appeared before the Faculty Council in November 1970 and was denied readmission. Plaintiff's examination papers and those of his Law School classmates have long since been destroyed. Several of plaintiff's professors are no longer associated with the Law School and do not now possess documents or records reflecting the academic work of plaintiff or other students in his classes.

In opposition to the pending motion for summary judgment, plaintiff argues that his claims did not accrue until some time after June 12, 1971 and that in any event, the running of the statute was tolled until after that date by various actions which he meanwhile took seeking readmission to the Law School. It is these questions to which the Court will address itself hereinafter.

*Accrual*

█ Although a federal court may borrow a state statute of limitations in a particular case, determination of the date when the federal cause of action accrues is governed by federal standards. Batchelor v. Legg & Co., 52 F. R.D. 553, 558 (D.Md.1971); Fitzgerald v. Appalonia, 323 F.Supp. 1269 (E.D. Pa.1971).

In West v. Board of Education of Prince George's County, 165 F.Supp. 382 (D.Md.1958), this Court, in dismissing a civil rights complaint as barred by limitations, concluded that the cause of action accrued when the essential act was committed and the injury sustained. In several recent civil rights cases involving allegations of racial discrimination of a continuing nature, courts have undertaken to fix the date of accrual by determining when the continuing acts resulted in a final injury. See Taliaferro v. State Council of High-

er Education, 372 F.Supp. 1378 (E.D. Va.1974); Contract Buyers League v. F & F Investment, 300 F.Supp. 210 (N. D.Ill.1969), aff'd sub nom., Baker v. F & F Investment, 420 F.2d 1191 (7th Cir.), cert. den. 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970).

▪ Whatever test is applied here, all of plaintiff's claims accrued more than three years before he filed suit. This is not a case in which the alleged injury resulted from acts of discrimination which continued until shortly before suit was filed. If plaintiff in fact received low grades because of his race, such discriminatory acts occurred between 1967 and 1970 while he was a student at the Law School. If plaintiff in fact was denied due process by the Faculty Council or was refused readmission because of his race, these acts occurred in 1970 when his formal petition was denied. Plaintiff was first advised by letter dated September 14, 1970 that the Faculty Council had considered and denied his petition for readmission. Following his request for a personal appearance, he did in fact appear before the Faculty Council on November 24, 1970 and was advised by Dean Cunningham by letter dated November 25, 1970 that the Council had adhered to its previous position that his petition should not be approved.

Thus, by November 25, 1970, plaintiff had finally suffered the essential injuries of which he is here complaining.[9] The Faculty Council's acts were quite clearly final ones. Plaintiff's petition for readmission had been initially denied in September 1970 and, following his personal appearance, such denial had been reaffirmed in November 1970. The date when plaintiff's cause of action accrued was not extended by his later efforts to gain readmission, including his appeal to the Chancellor of the University at Baltimore and the further petitions he filed with the Dean. If

his constitutional rights were infringed, such occurred when the Faculty Council acting pursuant to its authority to re-admit excluded students, denied plaintiff's petition for readmission and not when other officials of the University declined to change that result.

Plaintiff argues that he did not come to realize that he had been subjected to racial discrimination until September 1971. The record before the Court indicates otherwise. Plaintiff first suggested that the Law School was guilty of racial discrimination in the Spring of 1967 while discussing the rejection of his application for admission with Associate Dean William Hall. While a student, plaintiff took courses in Constitutional Law, and he testified at his deposition that he was conscious of alleged racial discrimination while a student at the Law School. In May of 1971, he specifically advised Dr. Kuhn that he had been dropped from the Law School because of "discriminatory practices" perpetrated against him and stated that he had retained an attorney and was prepared to go to federal court to contest the legality of his exclusion. Yet, unaccountably, plaintiff waited until June 1974 to file this action. The finding here is that his cause of action accrued more than three years before this suit was instituted.

### Tolling

▪ Federal standards likewise must be applied by a federal court in determining whether a state statute of limitations has been tolled. Atkins v. Schmutz Manufacturing Co., 435 F.2d 527 (4th Cir. 1970), cert. den., 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971); McDonald v. Boslow, 363 F. Supp. 493, 498 (D.Md.1973). In the Atkins case, the Fourth Circuit held that the pendency of an action in another court would toll an applicable state statute of limitations. Here, plaintiff claims

9. Even if the later appearance of both plaintiff and his attorney before the Faculty Council on March 23, 1971 were deemed to have given rise to any of his claims, plaintiff would

still be barred. Dean Cunningham advised him by letter dated March 24, 1971 that the Committee was still of the opinion that he should not be readmitted.

that the three-year Maryland statute was tolled by the efforts he undertook to exhaust state administrative remedies.

■ It is questionable whether a federal cause of action based upon a claim of racial discrimination would be tolled during the time that the plaintiff resorted to state administrative procedures. Plaintiff argues that exhaustion of state administrative remedies is required in a case of this sort and that therefore the applicable statute of limitations must necessarily be tolled during the time it took to complete such administrative procedures. However, the Fourth Circuit has recently held that exhaustion of state administrative remedies is not a prerequisite to the exercise of federal jurisdiction under 42 U.S.C. § 1983. Hayes v. Secretary of Department of Public Safety, 455 F.2d 798, 800 (4th Cir. 1972).

In support of his tolling argument, plaintiff relies on certain language in Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970). In remanding that case to the district court to consider whether the pursuit of state remedies by the plaintiff there tolled the applicable statute of limitations, the Fifth Circuit noted that it was within the purpose of the Civil Rights Act "to encourage utilization of state administrative and court procedures to vindicate alleged wrongs under a state-created cause of action before requiring a plaintiff to bring his federal suit to prevent his being barred by a state statute of limitations." (427 F.2d at 474).

But even assuming that this observation by the Fifth Circuit in the Mizell case were approved by the Fourth Circuit, the legal principle involved is of no aid to the plaintiff under the facts of this case. In Mizell, there were clearly established state administrative and judicial procedures to which the plaintiff in that case had resorted, commencing in 1961 with a formal hearing before an administrative body and ending with an affirmance of the administrative action by the Florida courts in 1965. In this case, plaintiff had been excluded from the Law School because of poor grades and the only administrative procedure available to him was a petition to the Faculty Council for readmission. The Council was empowered to readmit plaintiff if it found that plaintiff's grades were due to special and unusual circumstances and that there was a good reason to believe that plaintiff would be able to do satisfactory work in the future.[10] As discussed hereinabove, plaintiff's petition was finally denied by the Faculty Council on November 25, 1970, and he had therefore concluded his administrative procedures by that date. Whatever might have been the tolling effect of plaintiff's resort to administrative procedures in this case, the actions taken would not in any event have prevented the applicable three-year limitations period from barring this action.

■ The actions taken by plaintiff after November 1970 could hardly be viewed as the continuation of any proper administrative procedures. Plaintiff retained several attorneys and met with the Dean of the Law School on several occasions. He complained to and met with the Chancellor of the University at Baltimore, and he filed further unsuccessful petitions for readmission. None of these steps, initiated by the plaintiff himself, could have any tolling effect. If plaintiff could continue the tolling of the three-year statute of limitations merely by periodically filing fur-

10. It is not necessary to decide in this case whether plaintiff had a constitutional right to an administrative hearing concerning his exclusion from the Law School. It is clear that a state college must give a student accused of misconduct a fair hearing before dismissal. Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969), cert. den., 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970). It has also been noted, however, that due process does not require notice and a hearing for a student expelled for scholastic failure. Brookins v. Bonnell, 362 F.Supp. 379, 382 (E.D.Pa.1973) ; Connelly v. University of Vermont and State Agr. Col., 244 F.Supp. 156 (D.Vt.1965).

ther petitions for readmission, he could effectively prevent for an indefinite period of time the application of any limitations period to him. Such a result would put it in the power of the plaintiff to enlarge the time set by statute for commencing suit. See Einson-Freeman Co. v. Corwin, 112 F.2d 683, 684 (2d Cir. 1940), cert. den., 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 449 (1940). The running of limitations is not tolled in the absence of some insuperable barrier to the bringing of the action or some certain and well defined exception clearly established by judicial authority. Southern Maryland Oil Company v. Texas Company, 203 F.Supp. 449 (D. Md.1962).

Finally, relying on § 5 of Article 57 of the Annotated Code of Maryland, plaintiff argues that his claim against defendants Schreiber and Fisher are not barred by limitations because they were out of the State when his cause of action accrued.[11] Both of these defendants were formerly professors at the Law School, and both taught courses taken by plaintiff. Now located in Independence, Missouri, defendant Fisher was on the faculty of the Law School until June 1972, and defendant Schreiber who now resides in Philadelphia, Pennsylvania, was on the faculty until June 1970.

Quite obviously, if this action were permitted to continue against these two defendants, plaintiff would not be able to secure the principal relief he is seeking, namely readmission to the Law School. Defendants Fisher and Schreiber, who are no longer even employed by the Law School, could hardly be ordered by this Court to readmit plaintiff.

In any event, plaintiff's claim for damages against these two defendants would not be tolled by their absence from the State since June 1970 and June 1972 respectively. § 5 of Article 57 applies only if the defendant is absent when the cause of action arises or accrues. Professor Schreiber gave plaintiff a 67 in Constitutional Law for the Fall Term of 1968. Plaintiff's claim for damages against defendant Schreiber individually would thus have accrued by June 1969, when the grades for his second year were finally recorded and when defendant Schreiber was still in Maryland. Professor Fisher gave plaintiff a 66 in Legal Method for the Fall Term of 1968 and a 71 in Evidence for the Spring Term of 1969. Plaintiff's claim for damages against defendant Fisher individually would thus have accrued by June 1969 when defendant Fisher was still in Maryland.

Furthermore, the term "out of the State" in § 5 as applied in this case would mean beyond the reach of this Court's process. Maurice v. Worden, 52 Md. 283 (1879); Mason, Chapin & Co. v. Union Mills Paper Mfg. Co., 81 Md. 446, 32 A. 311 (1895). Under the Maryland Long Arm Statute, § 96 of Article 75 of the Annotated Code of Maryland, neither defendant Schreiber nor defendant Fisher were at any time after they left the Law School beyond the reach of this Court's process in a suit charging them with discriminatory acts allegedly performed while they were present in this State. Thus, whatever the date when plaintiff's cause of action against them accrued, they were not then "out of the State" within the meaning of § 5 of Article 57.

### Conclusion

For the reasons stated, this Court concludes that this action is barred by limitations.[12] Defendants' motion for summary judgment is accordingly granted.

---

11. § 5 of Article 57 provides as follows: "If any person liable to any action shall be absent out of the State at the time when the cause of action may arise or accrue against him he shall have no benefit of the limitation herein contained if the person who has the cause of action shall commence the same after the presence in this State of the person liable thereto within the terms herein limited."

12. In view of this Court's conclusion as to the issue of limitations, it is not necessary to determine whether this action is also barred by laches.